No. 29,418.

Horace Thomas, *Appellee*, v. The Liberty Life Insurance Company, *Appellant*.

(289 Pac. 414.)

Opinion filed July 5, 1930.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the appellant.

*Sylvan Bruner,* of Pittsburg, and *John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on a group insurance policy issued by defendant to the Lincoln Coal Company of Pleasanton indemnifying its employees for accidents suffered by them in the service of the coal company.

Plaintiff's petition alleged that he was one of the coal company's employees protected by the policy, and that on February 27, 1928, he suffered a hernia while lifting a car of rock on the dump of his employer's coal mine.

Defendant denied liability on the ground that plaintiff was not one of the employees of the coal company protected by the group policy and that his injury was not of the sort of accidents which the insurance contemplated. Defendant also answered that it had paid to the coal company's manager, August Kuplin, trustee for plaintiff, the sum of $303.20 to avoid litigation and in settlement of plaintiff's claim and to buy its peace with him.

Plaintiff replied that Kuplin had no authority to settle his claim, that plaintiff had no knowledge of it, and that any such settlement and release of liability was collusive and fraudulent.

Jury trial; special findings and general verdict for $4,000 in favor of plaintiff; motion to set aside the verdict and grant a new trial overruled; judgment entered for plaintiff; defendant appeals.

It is first contended that plaintiff was not included in the group of employees covered by the insurance. By the operative interpretation of the policy it was the duty of the coal company not later than the 15th of each month to send to the insurance company a list of its employees for the current month, together with the monthly premium of $3 for each of the insured employees. Defendant produced some such monthly lists which did not contain plaintiff's name, but the list for February, 1928, which ought to have been forthcoming and which would have been so persuasive on this crucial point, was not produced. Plaintiff testified that for a time the coal company deducted the premiums from his wages every two weeks and later on alternative pay days once a month. Kuplin, the coal company's manager, testified that the name of plaintiff as an employee had been sent to defendant and that the coal company remitted the premiums thereon at all times as they became due. Leslie Jones, another functionary of the coal company, testified that he had sent various lists of the changing per-

sonnel of employees to defendant from time to time, and that plaintiff's name was on the list of employees on which the coal company paid premiums for the month of February, 1928. In view of this evidence the jury's special findings on this controverted point must be sustained.

Defendant next contends that plaintiff's disability was not the sort of injury which the insurance policy purported to cover. The insuring clause bound defendant to indemnify against—

"The effects resulting directly and exclusively of all other causes from bodily injuries sustained by the insured arising out of and in the course of employment, . . . and resulting solely through external, violent and accidental means. . . ."

On this point plaintiff testified:

"When the car got off the track I got a pry and got under one end of it and tried to put one end on at a time, and in trying to do that my foot slipped. I felt a burning sensation and felt sick at my stomach and felt a tearing sensation. I lost my balance, but I caught myself. . . . I had this lump put back eight or ten times, probably, and the doctor has always done it. I never had this lump appear at any time before this 27th of February. . . . There is pain and burning and soreness at the point of rupture in the left groin all the time and you can feel a ridge and hole there and that is the rupture I got when I was lifting on the pit car on February 27, 1928."

The doctor who attended plaintiff testified:

"The lump in the left groin was about the size of a hen's egg. . . . [I] had it back in place in about an hour or an hour and a half."

It is argued, however, that such an injury was not the result of external violence, that the hernia was not caused by trauma, and consequently was not within the terms of the policy contract. Defendant supports this contention with a proposition laid down in a brief on "Accidental Means," page 8, by Martin P. Cornelius, general attorney of the Continental Casualty Company, published in 1917. In support of this proposition Mr. Cornelius cites *Southard v. Railway Passengers Assurance Co.*, which was a decision in 1868 by a federal district judge reported in supplementary addenda to the decisions of the supreme court of Connecticut in 34 Conn. 574. The pertinent matter in the headnotes of that case reads:

"A policy insured the holder against death or injury *'by violent and accidental means,* within the meaning of the contract and conditions annexed.'

. . .

"Where a person insured by such a policy was injured internally by jump-

ing in great haste from a railroad car at a station and running a considerable distance, but which action was not necessary to his safety, but was voluntarily undertaken to effect an important object, which required haste, it was held that the injury [which was a partially developed hernia] was not caused by 'accidental means' within the meaning of the policy."

A much later case, and more in keeping with the judicial attitude of the present day toward the indemnification of workingmen for industrial accidents sustained in their onerous occupations, was *Poccardi v. Pub. Ser. Commission*, 75 W. Va. 542, where the supreme court of West Virginia overruled the public service commission, which had denied compensation to the widow of a workman who had suffered a strangulated hernia while he and some fellow workmen were lifting a heavy pipe. The supreme court ordered the widow's claim for compensation to be paid. The pertinent paragraphs of the syllabus read:

"A rupture caused by a strain while at work is an accident or untoward event, arising in the course of employment, and compensable under the workmen's compensation act.

"Proof of apparent previous good health, a heavy and unusual lift in the course of work, discovery of rupture on the second day thereafter, death from surgical operation for relief thereof, and opinion of the operating surgeon that the rupture was caused by the lifting, is sufficient to establish accidental injury in the course of employment within the meaning of said act." (Syl. ¶¶ 4, 5.)

In *Matter of Jordan v. Decorative Co.*, 230 N. Y. 522, it was held:

"A hernia resulting from strain in lifting a heavy box is an accidental injury within the meaning of subdivision 7 of section 3 of the workmen's compensation law (Cons. Laws, ch. 67). (*Matter of Veneroni v. Bausch & Lomb Optical Co.*, 229 N. Y. 628, followed; *Matter of Alpert v. Powers*, 223 N. Y. 97, distinguished.)" (Syl. ¶ 1.).

In the opinion it was said:

"CARDOZO, J. The claimant, while lifting a box of clay weighing 700 pounds or more, strained his left side, and hernia resulted. There is no doubt that this was an accidental injury within the meaning of the statute (Workmen's Compensation Law, sec. 3, subd. 7; Consol. Laws, chap. 67). *Matter of Alpert v. Powers*, 223 N. Y. 97, holds nothing to the contrary. In that case there was no finding of any causal relation between the strain and the rupture. Here the causal relation is found and proved. In such conditions our ruling in *Matter of Veneroni v. Bausch & Lomb Optical Company*, 229 N. Y. 628, sustains the right to compensation. The ruling is in accord with the decisions in other jurisdictions. (*Fenton v. Thorley & Co.*, 1903 A. C. 443, 448; *Clover, Clayton & Co. v. Hughes*, 1910 A. C. 242.)" (p. 524.)

In the analogous case of *Summers v. Fid. Mut. Aid Ass'n*, 84 Mo. App. 605, plaintiff sued to recover on an accident insurance policy

which bound defendant to indemnify plaintiff for death from "bodily injuries of which there shall be visible marks upon the person as are effected directly and solely by external, violent and purely accidental means." The deceased was a "hostler helper" in a railway shop. While engaged in attempting to lift a heavy truck he suddenly "give down" and said, "I am hurt." He was taken on a car to the round-house and thence went home, where he shortly thereafter died. It was found that he was afflicted with hernia. It showed itself plainly by visible marks and indications upon his person. The court ruled:

"We are also satisfied that it was an accident produced by external or violent means, as those words are used in the provision aforesaid." (p. 612.)

See, also, *Skibbie v. Liberty Life Ins. Co.*, 130 Kan. 121, 285 Pac. 581; *Young v. Railway Mail Ass'n*, 126 Mo. App. 325; 1 Schneider's Workman's Compensation Law, § 200; note to *Poccardi v. Pub. Ser. Commission*, supra, in L. R. A. 1916A, 303, 304; and note and citations in Mich. L. Review, June 1930, pp. 1059, 1060.

In view of these well-considered precedents the court holds that the injury suffered by plaintiff on February 27, 1928, was an effect resulting solely through external, violent and accidental means within the terms of the policy.

Touching the defense based upon the defendant's settlement with Kuplin, trustee for plaintiff, and the release of defendant by Kuplin, it will suffice to say that there is nothing in the record to show Kuplin's authority to compromise or settle plaintiff's claim of indemnity under the insurance policy with which we are presently concerned.

It is next contended that the verdict should have been set aside and a new trial granted because the evidence failed to show that plaintiff was totally incapacitated, and because of certain evidence designed to show that soon after the trial plaintiff got possession of a truck and began to advertise for business as a truck hauler. The latter fact was not so potent as it might suggest. Plaintiff had indeed acquired a truck by purchase on the installment plan, and while he drove it to some extent he did no lifting and hired a man to do the physical labor connected with his trucking business. One of the doctors thus testified at the trial:

"I do not consider it safe for this man to work around pit cars and cars of coal and pinch freight cars and flat cars around and stand up all day weighing pit cars of rock and coal. . . . I examined Thomas last night and in the condition I found him I think he is in danger of having the intestines come

out through the opening in the wall of the abdomen in performing the duties of miner. In my opinion the performing of such duties would endanger his life."

Another doctor testified:

"He is still my patient. I advised him and told him that he wasn't physically able to do any work at all. I advised him to keep off his feet. . . . Thomas is entirely disabled from any of his duties as a coal miner and as a weigh boss. Any heavy lifting or exertion on the part of Thomas in his present condition would result in the intestinal part of the body coming down and would be strangulated and would have a complete rupture. . . . In my opinion, if Thomas undertakes a strain he is endangering his life. He should not walk any distance. I do not think he could stand around on his feet during the normal working hours of a day. This condition will continue the rest of his life if it remains as it now is."

The errors assigned on this phase of the case cannot be sustained. The other objections to the judgment suggested in defendant's brief have all been carefully considered, but none of them is of sufficient gravity to justify further discussion.

The judgment is affirmed.