No. 33,155

HENRY H. SIMMONS, *Appellee*, v. WILSON EMPLOYEES MUTUAL BENEFIT FUND, *Appellant*.

(64 P. 2d 50)

Opinion filed January 23, 1937.

*Arthur J. Stanley* and *J. E. Schroeder*, both of Kansas City, for the appellant.

*G. E. Gard* and *James D. Howell,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover for total permanent disability out of an employees' benefit fund. Plaintiff prevailed, and defendant appeals.

It is urged the trial court erred in three particulars: first, that total permanent disability was not established; second, the trial court erred in refusing to set aside certain special findings of the jury; third, plaintiff did not comply with the terms of the contract.

In view of the nature and scope of the special findings, the three contentions may be conveniently discussed in connection with the various findings. The subject of total and permanent disability is covered by findings 1, 2, 3 and 10. Those findings read:

"1. Do you find from all the evidence Henry H. Simmons to be totally and permanently disabled? A. Yes.

"2. If you should find the answer to the foregoing question to be 'yes,' then state the date you find plaintiff first became totally and permanently disabled. A. 1931.

"3. If you should find the answer to question No. 1 to be 'yes,' then state what caused his total and permanent disability. A. Low blood pressure.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"10. Could plaintiff have performed any other available manual labor since date stated in answer to question two? A. No."

In passing on an order overruling a motion to set aside special findings of the jury, this court is concerned only with evidence and inferences therefrom which support the findings, and does not consider evidence unfavorable to the findings. (*Dellenbaugh v. Great American Life Ins. Co.*, 141 Kan. 855, 857, 44 P. 2d 899; *Bergman v. Kansas City Public Ser. Co.*, 144 Kan. 27, 58 P. 2d 110.)

No useful purpose can be served by narrating all the evidence in support of the above findings. We have carefully examined the record and find abundant evidence to support them.

The contention of defendant that plaintiff had not sustained total permanent disability is based mainly on the fact plaintiff did some manual labor on relief jobs after his work with defendant had ended. True, he did some such work, but there is ample evidence he certainly did so at great hazard and, in fact, at the risk of his life. There was evidence he became unconscious on occasions while doing relief work. Plaintiff was about fifty years of age and had worked for Wilson & Co. as a sheep gutter for about eleven years. He had an unconscious spell in 1929. Since that occasion he testified he "fell out" as often as two or three times a week. By "fell out," he meant he became unconscious.

Doctor Love, the only physician called as a witness, testified, among other things, as follows: Plaintiff has low blood pressure; his blood pressure was 100, and the blood pressure of an individual is his age plus 100; that is systolic pressure and denotes the active force of the heart; there is no cure for high or low blood pressure; low blood pressure is just as disabling as high blood pressure and sometimes more so; he had arteriosclerosis in August, 1931, when he first examined him and has had that condition continuously with some exaggeration; witness' opinion was that any laborious type of work plaintiff might do would be at his own hazard; he is liable to be brought off the job if he attempts to do hard manual labor like digging in ditches or shoveling dirt; any type of work where there is an element of rush or hurry or excitement, even though it is very little, will cause the same trouble; this man could not pass an examination for industrial employment; his general arterial system

is weakened, his arteries are stiff, his heart weak and he is liable to be seized with a sudden attack of what is called heart failure; this condition is permanent and there is no cure.

The doctor of the defendant company did not testify. Plaintiff testified concerning a conversation with the company doctor as follows:

"Their doctor said I couldn't work. Mr. Keller (assistant secretary of the fund), told me to come in and go to work and the doctor wouldn't let me in. He, the doctor, told me to go home and that I couldn't work on account of my condition."

The fact plaintiff had done work on relief projects would indicate it was imperative he do something to provide food and shelter. He probably thought it was just as well to die trying to work as to starve to death. The fact he did some work at the risk of life did not mean he was not entitled to recover for total permanent disability. (*Thomas v. Liberty Life Ins. Co.*, 131 Kan. 175, 289 Pac. 414, *Maresh v. Peoria Life Ins. Co.*, 133 Kan. 191, 299 Pac. 934; *Dellenbaugh v. Great American Life Ins. Co.*, supra [see numerous cases cited in last case]; *Wall v. Casualty Co.*, 111 Mo. App. 504, 86 S. W. 491.) In the Wall case it was said:

"The wish to prove always equal to his part and fear of discommoding his employer, might, and doubtless sometimes does, influence a workman to postpone asking sick leave when he needs it and is wholly unfit for service in any real sense. The fact that a person sticks to his post is not always and necessarily conclusive that he was able for duty. In peace and war men have been known to do so when dying, and historic instances of the kind will be called to mind by the reader. No one would say that in such cases the sufferers were not totally disabled for duty, though in fact they persisted in the performance of duty." (p. 522.)

It is next contended plaintiff in presenting his claim did not comply with a provision of the contract. The provision referred to is contained in the application for membership in the fund, and reads:

"I further agree, that in case of sickness or injury I will immediately notify the assistant secretary of my district, or cause him to be so notified, and all claims for benefit shall be reckoned from the date of such notification. I will obtain from the physician designated by the fund a certificate of disability and present the same to the secretary when making claims for benefits, and the statements of the physician designated by the fund shall be final; and it is fully understood and agreed upon by me that a failure to conform to any of the above requirements will act as a forfeiture and waiver of all my rights to receive benefits for such time. I further agree to abide by the constitution and bylaws of said fund now in effect and as they may from time to time be altered and amended."

Defendant therefore contends findings 4 and 5, as well as finding number 3, should have been set aside for the reason they were wholly unsupported by evidence. Findings 4 and 5 read:

"4. Do you find from all the evidence that Henry H. Simmons ever made a claim to the defendant for total disability? A. Yes.

"5. If you should answer the foregoing question No. 4 'yes,' then state answer to—

"(a) The date of such claim. A. Latter part of 1931 or first part of 1932.

"(b) To whom such claim was made. A. Keller.

"(c) Whether claim was written or oral. A. Oral."

The resident assistant secretary, Mr. Keller, was in charge of the actual administration of the fund at this plant. Plaintiff began working for defendant in 1920. About August 19, 1929, he "fell out," and was confined to his home for two months and five days. Later he returned and worked until August 18, 1931, when he had another spell and this time was confined to his home eight months and to his bed most of the time. On October 3, 1931, he was paid for disability on a certificate by the company doctor. On December 5, 1931, and again on January 28, 1932, he was paid for disability on a certificate by Doctor Love, who was not a company doctor. The assistant secretary did not offer these certificates in evidence. He explained his automobile had been broken into on a certain occasion and the certificates had been stolen. A permanent record to which the data on the certificates had been transferred was introduced. According to the book records the first disability was peripatellar bursitis, and the disability on the last two occasions was secondary anemia. The evidence was, secondary anemia did not constitute permanent disability.

From the foregoing it is clear the company doctor did examine plaintiff, did make a certificate and that the certificate was presented to the assistant secretary as the contract required. It is also clear defendant did not in fact restrict payments on the basis of certificates made by the company doctor, but on the other hand accepted, and paid on, certificates of Doctor Love, who was not a company doctor. The record further discloses that during the eight months' period of disability following August 18, 1931, plaintiff had a conversation with Mr. Keller about his compensation, which plaintiff testified was as follows:

"I told him I wanted my insurance money. I also told him the doctor said I wouldn't be able to work back there and I wanted all my money. I meant this Wilson Employees' Benefit Fund. Mr. Keller told me that I had

to be totally disabled before I could get it. I was talking about total disability."

Also, sometime in the year 1932, the exact date not being disclosed, plaintiff had an interview with both Mr. Keller and the company doctor. Concerning it plaintiff testified:

"After about eight months I went back down to the packing house and saw Doctor Sterks (the company doctor), and Mr. Keller and the doctor wanted to know how long I had been off and I told him around eight months, and he said that I would have to sign to go back to work, and I signed up and the doctor examined me and told me to go home and they would send after me. The doctor sent me back home. I have not worked for Wilson & Company since that time. I have not seen any doctor of Wilson & Company since that time. I was trying to go to work when I went down there in 1932.

"Their doctor said I couldn't work. Mr. Keller told me to come in and go to work and the doctor wouldn't let me in. He, the doctor, told me to go home and that I couldn't work on account of my condition."

It follows there was evidence plaintiff made a claim on the assistant secretary, the proper officer, for total disability, the company doctor examined plaintiff, refused to permit him to work, advising him he could not work on account of his condition and sent him home. As heretofore stated, the company doctor did not testify.

Just what more could plaintiff have done? Shall this court say it was plaintiff's fault no certificate was made by the company doctor containing the nature of plaintiff's disability at that time? Shall we say that by reason of the company's failure to make the certificate plaintiff must be denied recovery? We think not. It should also be noted there was no objection made to Doctor Love's testifying, on the theory he was an incompetent witness by reason of the contract provision mentioned, or for any other reason. Nor was there a motion his testimony be stricken on the ground he was not the physician designated by the fund. Neither was the reception of his testimony mentioned or included among the alleged errors on motion for new trial. It would appear the lawsuit was tried on the theory his testimony was competent. There was ample testimony to support findings 3, 4 and 5. The trial court did set aside other special findings on the ground they were not supported by the evidence, but the findings we have discussed are sufficient to support the judgment. For the reasons stated, the judgment must be affirmed. It is so ordered.