No. 30,572.

CLYDE SHATTUCK, *Appellee*, v. THE PICKWICK STAGES CORPORA-
TION and THE PICKWICK-GREYHOUND LINES, INCORPORATED, *Ap-
pellants.*

(11 P. 2d 996.)

Opinion filed
June 4, 1932.

*M. J. Healy,* of Topeka, and *Douglas Hudson,* of Fort Scott, for the appellants.

*John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from a collision between a bus operated by Pickwick Stages Corporation and plaintiff's automobile. Pickwick-Greyhound Lines, Incorporated, was made a party defendant. Judgment was rendered against both defendants, and they appeal.

Plaintiff was driving his automobile southward on highway 73-E, which is paved with a cement slab. Plaintiff was on the west side of the pavement, and the bus was following him. Plaintiff made a

left turn into an intersecting highway. The bus struck the automobile, damaged it, and plaintiff's wife, who was beside him in the front seat of the automobile, was severely injured. The case was tried by the court. The testimony was conflicting. The court found generally for plaintiff, and this court is concerned only with testimony and inferences from testimony favorable to plaintiff. Defendants ignore this settled principle of appellate review in presenting assignments of error requiring consideration of evidence.

Plaintiff testified that when he approached the highway crossing he was traveling at a rate of speed of 15 to 20 miles per hour, and the bus was traveling at a rate of 50 to 60 miles per hour. Plaintiff saw the bus in his rear-vision mirror. When plaintiff was about 120 feet from the crossing he signaled the bus driver that plaintiff intended to turn, by putting out his left hand. The bus was then about 280 feet behind the automobile. Without looking at the bus again, plaintiff made the turn to the left, and the bus struck the automobile. The collision occurred after the four wheels of the automobile were entirely off the pavement on the east side. Without the bus horn having been sounded, the bus had crossed from the west side to the east side of the pavement, and at the moment of impact the east wheels of the bus were entirely off the east side of the pavement, and the west wheels were within six to eighteen inches of the east edge of the pavement.

Defendants contend the rates of speed of the two vehicles, as plaintiff estimated them when he gave his signal, were such that the two vehicles were certain to come together at the highway crossing, and plaintiff was guilty of contributory negligence because he did not look to see what the bus was doing after he gave the signal.

The bus had been following the automobile for half a mile, and was gradually gaining on the automobile. Plaintiff's signal was given at a proper distance from the point at which the turn was to be made. No conditions were described which made it improbable the signal would be seen, and the bus driver did see it. He told plaintiff he saw the signal, and he testified he saw the signal. True, he testified the signal was not given until the bus was about to pass the automobile; but plaintiff's testimony on the subject must be accepted here.

Plaintiff testified he signaled by putting out his left hand, and he held his hand down, and up. How much his hand varied from a horizontal position was not disclosed. There is no general law in this state prescribing any specific kind of signal to be given for

a left turn, and no general custom or understanding among auto vehicle drivers relating to the subject was shown, or exists. When plaintiff put out his hand, he indicated to the bus driver he was about to do something. It might be to slow down, or to stop, and it might be to turn to the right or to the left into the intersecting highway. The bus driver was not misled, because he testified plaintiff "put his left hand out the door to signal a turn." The result is, plaintiff was authorized to assume the bus driver would keep in his lane and would keep his vehicle under control until the change in movement of the automobile, whatever it was, was observed. Plaintiff was not obliged to anticipate the bus would undertake to pass him on the left at unchecked speed as he was executing the left turn. On cross-examination plaintiff testified he felt he had a right to make the turn so long as the bus was as far back as it was, and the prudence or imprudence of his conduct was a matter of fact for the court to determine. As indicated, the testimony relating to what occurred just before the collision was irreconcilably conflicting. The conflict was resolved by the district court, and the evidence favorable to plaintiff affords no basis for a declaration by this court that plaintiff was guilty of contributory negligence as a matter of law.

The statute in force at the time of the accident provided that on approaching a highway crossing or turning corners, the person operating a motor vehicle should reduce speed to not exceeding eight miles per hour. The bus driver violated the statute, and plaintiff violated the statute, the same as all other auto-vehicle drivers using paved roads violated the statute. Defendants contend plaintiff's violation of the statute precluded recovery. There is no basis for an inference that plaintiff's violation of the statute contributed to the collision. Indeed, there is reasonable basis for inference that if plaintiff had slowed down, the accident might have been much more serious than it was.

There was evidence that the injuries to plaintiff's wife were such that she required and would continue to require the services of a nurse and personal attendant. Plaintiff was allowed $75 for cash outlay for nurse hire. After a time plaintiff acted as his wife's nurse and attendant, and the award of damages included an allowance to him for his services in that capacity. He was awarded nothing for loss of time from business or occupation. Defendants contest the allowance to plaintiff, and invoke the statute that when a married woman sustains personal injury by wrongful act of another,

impairing her ability to perform services in the household and in discharge of domestic duties, the right of action for such impairment vests in her. (R. S. 23-205.) The statute does not apply. Plaintiff recovered nothing on account of his wife's inability to perform household duties and domestic service. He undertook to perform the function of a nurse, and recovered for his services in that capacity, valued as nurse hire—something not covered by the so-called emancipation act modifying the common law.

The accident occurred on August 12, 1928. After the accident and, according to the answer of Pickwick-Greyhound Lines, in the latter part of 1928, Pickwick Stages sold, assigned and transferred its business, rights, and assets to Pickwick-Greyhound Lines. Pickwick-Greyhound Lines contends there was no proof that it assumed liability for the accident.

The transfer of business, rights and assets was recited in an application to the public service commission by Pickwick Stages, for transfer of its certificate of convenience and necessity to Pickwick-Greyhound Lines. The application was verified by the secretary of Pickwick Stages, and Pickwick-Greyhound Lines joined in the application. The application was made pursuant to R. S. 1930 Supp. 66-199, which reads:

"Where a certificate such as provided for above shall have been regularly issued, and thereafter the motor carrier to whom such certificate shall have been issued, shall sell, transfer or assign the business, rights and assets of such motor carrier, then and in that event the said certificate originally issued to such motor carrier shall, upon application to the public utilities commission, be by such commission transferred to the purchaser, and be effective in like manner as though originally issued to such purchaser."

On October 28, 1929, and pursuant to the joint application, the public service commission issued an order transferring the certificate of convenience and necessity to Pickwick-Greyhound Lines. The order recited the assignment and transfer of the business, rights and assets of Pickwick Stages as a motor carrier to Pickwick-Greyhound Lines, and concluded as follows:

"That the certificate of convenience and necessity heretofore issued herein covering route number 132 be and the same is hereby transferred to the Pickwick-Greyhound Lines, Inc., a Delaware corporation, the said purchaser to assume the duties, responsibilities and liabilities existing under and by virtue of said certificate and to operate under the rates, rules and practices now in force and effect."

Use of public highways for conduct of the business of a motor

carrier is a special privilege, the exercise of which may be regulated in the interest of the general welfare. At the time of the accident, and at the time the transfer was made, the statute declared it to be unlawful for any motor carrier to engage in the business of transporting persons and property on the highways of the state without first procuring a certificate from the public service commission declaring that the public convenience and necessity would be promoted by the proposed business. (R. S. 1930 Supp. 66-199.) Consequently, granting of the certificate of convenience and necessity was in effect the granting of a franchise.

The statute further provided that no certificate of convenience and necessity should be issued until the motor carrier should give security which would adequately protect the interests of the public, and which would insure payment of compensation for injuries to persons and loss of or damage to property resulting from negligent operation of the motor carrier's business. If, however, the motor carrier should prove to the satisfaction of the public service commission that the motor carrier had financial ability to protect the interests of the public and to pay compensation for injuries to person or property caused by negligent operation of the business, security might be waived. (R. S. 1930 Supp. 66-1102.) Therefore, the furnishing of adequate protection against the harmful consequences of negligent operation of the business of a motor carrier was a condition precedent to lawful prosecution of the business. Unlawful prosecution of the business was punishable by fine or imprisonment or both. (R. S. 1930 Supp. 66-1104.)

Pickwick Stages was an Arizona corporation. Its report to the public service commission for 1928 showed it had property owned and used in the state of Kansas, consisting of buses, of the value of $40,000. Its report for 1929 showed it had no property in the state of Kansas, and no business nor office nor agent in the state of Kansas. The report contained the following statement:

"Equipment sold to Pickwick-Greyhound of Delaware, and was included on report filed by them."

After the sale Pickwick Stages made application to the public service commission to withdraw from the state of Kansas.

As indicated, Pickwick-Greyhound Lines is a Delaware corporation, and it was admitted to do business in the state of Kansas on December 4, 1928. Its report to the public service commission for

1930 showed it had property owned and used in the state of Kansas of the value of $142,000, and that it had an office in the state of Kansas. No report for the portion of the year 1929 remaining after it acquired the Pickwick Stages certificate of convenience and necessity was introduced in evidence.

The result of the foregoing is, we have the familiar case of a corporation holding a public franchise, disposing of its franchise and property to another company which continues the business under the franchise, but insists the creditors of the first corporation shall hold the sack. The court holds that a motor carrier which succeeds to the business, rights, assets and franchise of another motor carrier succeeds to existing liabilities to the extent of assets acquired.

Under the motor-carrier law the special privilege conferred by the certificate issued to Pickwick Stages was burdened with liability resulting from negligent conduct of the business. Pickwick-Greyhound Lines was not just an ordinary purchaser of property. It desired not merely the business and assets, but the particular special privilege which Pickwick Stages held. Pickwick-Greyhound Lines was bound to know the law. The law provided that it took the certificate as if the certificate had been issued to it originally. The order transferring the certificate specified that it assumed existing liabilities under the certificate. It took the benefit burdened with the corresponding obligation.

Pickwick-Greyhound Lines did not see fit to disclose the exact date of purchase or the exact amount of assets acquired, as it could have done. Without indulging the natural inference arising from this fact, the court regards the evidence which has been recited as tending to show Pickwick-Greyhound Lines acquired assets of Pickwick Stages to the amount of $40,000.

The evidence which has been recited, and on which liability of Pickwick-Greyhound Lines is rested, is not disputed, and it is not necessary to consider objections to other evidence offered and received as corroborative of assumption of liability.

The judgment of the district court is affirmed.