## No. 32,790

ARNOLD BERGMAN, *Appellee,* v. THE KANSAS CITY PUBLIC SERVICE COMPANY, *Appellant.*

(58 P. 2d 110)

Opinion filed June 6, 1936.

*Fred Robertson, Edward M. Boddington, J. O. Emerson,* all of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., for the appellant.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for personal injury resulting from a collision of defendant's passenger bus and plaintiff's milk truck. Plaintiff prevailed, and defendant appeals.

The collision occurred in daylight, at an automatic light-controlled intersection of Seventh and Ann streets in Kansas City, Kan. The light signals were green, yellow and red. The witnesses refer to the yellow signal as amber. Plaintiff was traveling south on Seventh street and turned east. Defendant's bus was traveling north on Seventh street. The collision occurred east of the center of the intersection. The jury made the following special findings:

"1. When the front wheels of the defendant's bus were even with the south line of Ann avenue, what was the color displayed on the traffic control signal located on the northeast corner of the intersection? A. Amber.

"2. Which vehicle entered the intersection first, the plaintiff's truck or the defendant's bus? A. Truck.

"3. At the rate of speed at which the defendant's bus was traveling immediately before the collision, within how many feet could the driver have stopped it? A. About seven feet.

"4. When the driver of defendant's bus saw or in the exercise of ordinary care and prudence could and should have seen the plaintiff's truck directly in front of him so that a collision was inevitable, how many feet were they then apart? A. About four feet.

"5. On which side of the east-and-west center line of Ann avenue extended through the intersection did the collision take place? A. South side.

"6. At what speed did the Bergman milk truck travel from the time it entered the intersection until the time of the collision? A. Four or five miles per hour.

"7. What was the speed of the bus: (a) when entering the intersection; (b) after entering and before the collision? A. (a) About 20 miles per hour. (b) Approximately the same speed as entering the intersection.

"8. At the first moment of collision, what part of the bus and what part of the milk truck collided? A. The left front bumper and fender of the bus struck the right front door and right front wheel of the truck.

"9. At the speed at which the milk truck was being driven after it entered the intersection and up to the time of collision, in what distance could the driver have stopped the same? A. One or two feet.

"10. How far did the front part of the two vehicles move after the collision and before they came to a stop? A. About 35 feet.

"11. Under the circumstances shown by the evidence, was it negligence on the part of the plaintiff for him to attempt to drive his car across in front of the oncoming bus? A. No.

"12. If you find the defendant was negligent, state specifically what the negligence consisted of. A. Did not have bus under proper control. The bus operator was negligent in entering the intersection on the amber light and slow in applying his brakes. Also, the bus brakes were slow in acting."

Defendant moved to set aside findings 1, 2, 5, 10 and 11, on the ground they were not sustained by sufficient evidence. The motion admits there was some evidence in support of each finding. We have carefully examined the record. It is unnecessary to narrate all the material evidence at this point. Pertinent portions of it will receive our attention in the course of the opinion. There was sharp conflict of evidence on practically every vital point.

Defendant insists plaintiff cut the northeast corner of this intersection in violation of the city ordinance and that the accident occurred in the northeast quarter of the intersection. This contention is contrary to finding number 5. Defendant lays much stress on the

location of glass and marks on the pavement as important factors in determining where the collision occurred. It also seems to us these facts were important considerations in determining the correct answer to question No. 5. It is not our province, however, to determine the weight to be accorded this particular portion of the evidence. Nor are we permitted to substitute our judgment for that of the jury, and thereby disregard positive evidence of witnesses that the collision occurred in the southeast corner of the intersection.

According to finding No. 10, the front part of the vehicles moved about 35 feet after the collision. The width of Ann street was 38 feet and 10 inches. There was substantial evidence appellee made the turn west and south of the center of the intersection, and that his milk truck was about four or five feet north of the south line of Ann street when struck. There was ample evidence plaintiff's truck, as a result of the collision, did not come to a complete stop until it crossed Ann street. The evidence was therefore substantial in support of finding No. 10.

There was ample evidence in support of findings Nos. 1 and 2. This leaves for consideration finding No. 11, which finding relieves plaintiff of contributory negligence. The motion admits there was some evidence to support that finding. If the evidence was substantial the finding must, of course, stand. In reviewing the evidence we can be concerned only with testimony and inferences therefrom which tended to support the finding. (*Shattuck v. Pickwick Stages Corp.*, 135 Kan. 602, 11 P. 2d 996.) If the facts were such that reasonable minds could reach different conclusions therefrom, the question of contributory negligence was one for the jury. (*Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721, and cases therein cited.)

We are referred to the following city ordinances:

"Section 34: The following street and parts of streets are hereby declared to constitute arterial highways for the purpose of this section: Seventh street, from Shawnee avenue to Quindaro boulevard."

"Section 37-b: Thirty-five miles per hour upon all boulevards or arterial highways."

"Section 46-c: Vehicle turning left at an intersection. The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction *which is within the intersection or so close thereto as to constitute an immediate hazard,* but said driver having so yielded and having given a signal when and as required by law, may make such left turn, and other vehicles approaching the intersection from said opposite direction shall yield to the driver making the left turn." (Italics inserted.)

"Section 48-b: Approached [approach] for a left-hand turn shall be made in the lane for traffic to the right of, and nearest to the center line of the roadway, and the left turn shall be made by passing to the right of such center line where it enters the intersection and upon leaving the intersection by passing to the right of the center line of the roadway when entered."

"Section 59-a: The driver of any vehicle upon a street before starting, stopping or turning from a direct line shall first see that such movement can be made in safety."

"Section 6: Whenever traffic at an intersection is controlled by traffic control signals, exhibiting colored lights, said lights shall indicate as follows: Green: Traffic facing the signal may proceed, except that vehicular traffic shall yield the right of way to pedestrians and vehicles lawfully within a cross walk or the intersection at the time such signal was exhibited, except as herein otherwise provided in section 56. And that is providing you cannot drive through a funeral procession: Yellow: When shown along following the green: traffic facing the signal shall stop before entering the nearest cross walk at the intersection unless so close to the intersection that a stop cannot be made in safety. Red: Traffic facing the signal shall stop before entering the nearest cross walk at the intersection or at such other point as may be designated by signs or markings placed by the commissioner of streets, and remain standing until green is shown. The driver of a vehicle or street car intending to turn at an intersection where traffic is controlled by traffic signals, shall proceed to make such turn with proper care to avoid accident and only upon the green signal, unless otherwise directed by a police officer."

Plaintiff entered the intersection from the north on the green signal. Defendant's bus was not then in the intersection. There was substantial evidence plaintiff made the turn within the intersection as required by ordinance, section 48-b. Plaintiff testified he gave his signal for the turn. The evidence was corroborated by a passenger on defendant's bus. The bus driver did not deny that plaintiff gave the signal for a left turn, but said he did not see the signal. There was evidence when plaintiff started to make the turn defendant's bus was at least 50 to 75 feet away; that the signal against the bus had turned from green to amber when the bus was 50 feet south of the intersection; the bus driver testified he saw the milk truck down the street 50 or 60 feet. According to this testimony, defendant's bus was neither within the intersection nor so close thereto as to constitute an immediate hazard.

Defendant calls attention to the comparative speed of the vehicles as shown by findings 6 and 7, and to their respective ability to stop. It asserts plaintiff's speed was so slow he could not have made the turn and crossed Ann street in time to have avoided the accident. We are also reminded plaintiff testified he did not notice the light signals had turned after he had entered the intersection and that he

did not observe the bus after he started to make the turn. Defendant urges these facts constitute contributory negligence as a matter of law. The contention overlooks the fact plaintiff had given a signal for the turn in ample time and that plaintiff was not required to anticipate that defendant would not observe plaintiff's signal to turn and the ordinance pertaining thereto. Touching the subject of turns at intersections, as not constituting contributory negligence, as a matter of law, after the giving of a signal for a turn in ample time, see *Shattuck v. Pickwick Stages Corp.*, supra, page 604. The fact plaintiff did not see the signal turn amber against defendant bus driver, did not render plaintiff guilty of contributory negligence as a matter of law. The fact plaintiff did not see the light turn against defendant did not alter the fact that it had done so. According to the evidence most favorable to plaintiff there was no occasion for plaintiff further yielding the east side of Seventh street to defendant. Plaintiff had signaled for a left turn, defendant's bus was then neither within nor so close to the intersection as to constitute an immediate danger and the amber signal had prohibited defendant bus driver from entering the intersection while he was still at least fifty feet away.

Defendant insists finding No. 4 clearly discloses plaintiff's contributory negligence. Of course, there came a time when the collision was inevitable. The jury found plaintiff was not guilty of negligence in bringing about that condition. The evidence most favorable to plaintiff supports the finding. The defendants' bus had at least fifty feet within which to stop after plaintiff had signalled for the turn, and when plaintiff started to make the turn and after the signal turned amber against defendant. At the speed of twenty miles per hour, the bus could have stopped in about seven feet. Whatever the exact speed of the bus may have been when fifty feet south of the intersection, according to the evidence it could have stopped with entire safety and ease before reaching the intersection. Plaintiff intended to make the turn when he entered the intersection. In order to do so he entered the intersection on the green signal as section 6 of the ordinance required. He had, also, complied with sections 46-c and 48-b of the ordinance. Whether, under all these circumstances, he proceeded to make such turn with proper care for his safety as required by section 59-a of the ordinance, or whether his conduct constituted contributory negligence, was a question of fact for the jury and not a question of law for the trial court. (*Hughes*

*v. Motor Co.,* 111 Kan. 397, 207 Pac. 795; *Keir v. Trager,* 134 Kan. 505, 7 P. 2d 49; *Shattuck v. Pickwick Stages Corp.,* 135 Kan. 602, 11 P. 2d 996; *Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 721; *Spohn v. Southern Kansas Stage Lines,* 142 Kan. 595, 50 P. 2d 1001; *Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923.)

In defendant's brief it is said the motion to set aside special findings included finding No. 12. The motion contained in the abstract does not include that finding. If it was included in the original motion it is not well taken. The finding was supported by substantial evidence.

Defendant's demurrer to plaintiff's evidence was overruled. Complaint is made of that ruling in the specifications of error, but is not stressed here. It is therefore assumed defendant has abandoned that contention. At any rate, from what has been said it follows there was no error in that ruling.

It is further contended the doctrine of last clear chance was not in this case. Defendant asserts last clear chance was not pleaded; plaintiff could have stopped within one or two feet and hence he at all times had the last clear chance to avoid the accident; plaintiff's negligence was a continuous process and never ceased, and instruction No. 16 was an incorrect statement of the doctrine. Had the jury found plaintiff guilty of contributory negligence, some of these contentions would be entitled to serious consideration. The jury, however, found to the contrary. In *May v. Kansas Power & Light Co.,* 134 Kan. 470, 7 P. 2d 108, it was said:

"Counsel for defendant contend that the sole question in this case involves the doctrine of 'last clear chance.' If so, there is no use for further discussion. That doctrine could only apply here if the plaintiff himself had been negligent, that his negligence had ceased, and that defendant thereafter had an opportunity, if diligently exercised, to save plaintiff from the peril his own negligence had gotten him into. (*Jamison v. Atchison, T. & S. F. Rly. Co.,* 122 Kan. 305, 252 Pac. 472; *Dearing v. Wichita Rld. & Light Co.,* 130 Kan. 142, 285 Pac. 621.) Here, however, there was no negligence on the part of plaintiff, and the jury's special findings conclude that phase of this lawsuit." (p. 474.)

It is also urged the verdict of $2,900 was excessive and was rendered under the influence of passion and prejudice. The record before us provides no basis for disturbing the verdict on either of these grounds.

The judgment is affirmed.