Gloria RIOS, Plaintiff,

v.

F. Calvin BIGLER, M.D., and Lauren Welch, M.D., Defendant.

No. 93–2050–JWL.

United States District Court, D. Kansas.

March 11, 1994.

Bryson R. Cloon, Cloon, Bennett, Ronan & Viveros, Overland Park, KS, for Gloria Rios.

Marta Fisher Linenberger, Wayne T. Stratton, Steve A. Schwarm, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for F. Calvin Bigler, M.D.

Janet M. Simpson, Holbrook, Heaven & Fay, P.A., Kansas City, KS, for Lauren A. Welch, M.D.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is before the court on the motion of defendant F. Calvin Bigler, M.D. ("Dr. Bigler"), for summary judgment (Doc. # 52), on the motion of defendant Lauren Welch, M.D. ("Dr. Welch"), for partial summary judgment (Doc. # 50), and on the motion of plaintiff to designate an additional standard of care expert (Doc. # 57). In this malpractice action, the plaintiff, Gloria Rios, alleges that the defendant doctors failed to properly diagnose and treat reflex sympathetic dystrophy ("RSD") and that their failures caused her damages in excess of $50,-000.00. For the reasons set forth below, the court grants in part and denies in part Dr. Bigler's motion for summary judgment (Doc. # 52), and grants in part and denies in part Dr. Welch's motion for partial summary judgment (Doc. # 50). The court denies plaintiff's motion to designate an additional standard of care expert (Doc. # 57).

### I. Facts

The following facts are uncontroverted for purposes of this motion. On September 20, 1990, plaintiff injured her wrist while pulling sheets out of a bin at work. She was first

examined by Dr. Bigler on September 24, 1990, at which time he recommended an excision of a left wrist ganglion. Dr. Bigler performed the surgery with plaintiff's consent on September 26, 1990. Plaintiff does not dispute that the surgery was properly performed.

On October 15, 1990, plaintiff visited Dr. Bigler for a follow up exam. At that time, Dr. Bigler noted that the appearance of the surgery site was excellent and instructed plaintiff to continue light work for another week and then to return to full duty. On October 29, 1990, Dr. Bigler again saw plaintiff for a follow up exam, and noted no evidence of the recurrence of the ganglion. During the next visit on November 12, Dr. Bigler instructed plaintiff to begin therapy with her left hand by using a small ball and squeezing it many times each day. On December 18, 1990, Dr. Bigler saw plaintiff for the last time and noted that the weakness in plaintiff's hand had not improved since the last visit. Plaintiff contends that she exhibited or presented with some symptoms and complaints that were not recorded in Dr. Bigler's notes.

As of January 1, 1991, the care of Gloria Rios was assumed by Dr. Welch.[1] On February 7, 1991, Dr. Welch examined plaintiff for the first time and injected two bumps on her wrist with Xylocaine with Depo–Medrol. On February 28, 1991, Dr. Welch prescribed an anti-inflammatory (Butazolidin) to reduce inflammation, referred plaintiff to physical therapy and required her to wear a splint to immobilize her hand and wrist. Dr. Welch next saw plaintiff on March 25, 1991, at which time he ordered a nerve conduction study. Dr. Welch saw plaintiff for the last time on April 4, 1991, and placed plaintiff in a cast to immobilize her hand and wrist.

Plaintiff visited another physician, Dr. Guillermo Garcia, on April 18, 1991, who removed the cast and placed her into physical therapy. Subsequently he referred her to Dr. Tyrone D. Artz, who believed that the plaintiff had RSD, and, further, that by the

fall of 1991, plaintiff was in the third and final stage of the disease.

Plaintiff has been evaluated at the Research Medical Center Pain Clinic, by Dr. Gregory Friend. Dr. Friend diagnosed plaintiff as suffering severe RSD. In November of 1992, plaintiff came under the care of Dr. William Herrera, a neurologist who treats RSD in Pueblo, Colorado, who believes plaintiff has a clear case of RSD. Defendants dispute whether the condition plaintiff suffers from is in fact RSD and deny that they deviated from the requisite standard of care in their treatment of plaintiff.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langely v. Adams County, Colorado,* 987 F.2d 1473, 1476 (10th Cir. 1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.,* 740 F.Supp. 1519, 1522–23 (D.Kan.1990).

■ The court recognizes that summary judgment is not favored in negligence cases;

---

1. Dr. Bigler and Dr. Welch were in practice together until December 31, 1990. It appears that at that time, Dr. Bigler relocated and his patients (at least Gloria Rios) were then cared for by Dr. Welch.

however, negligence is never presumed, and a plaintiff has a duty to offer proof concerning all elements of his or her claims. *See Sharples v. Roberts,* 249 Kan. 286, 292, 816 P.2d 390, 394 (1991) (citing *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553). More than a "procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

## III. Negligence

Under Kansas law, the elements necessary to establish a claim for medical malpractice are the same as those required in any negligence action. *Sharples,* 249 Kan. at 294, 816 P.2d at 396. Plaintiff must show that the defendants owed a duty to her, that they breached this duty and that there is a causal connection between the breached duty and the injuries sustained. *Mellies v. National Heritage, Inc.,* 6 Kan.App.2d 910, 912, 636 P.2d 215, 218 (1981). In a malpractice action, all three elements must be established through the testimony of one or more competent expert witnesses.[2] *Wozniak v. Lipoff,* 242 Kan. 583, 587, 750 P.2d 971, 975 (1988). It is incumbent upon the plaintiff to prove all three elements of her action and a failure to establish any one element against a particular defendant entitles that defendant to judgment in his favor as a matter of law. *Mellies,* 6 Kan.App.2d at 912, 636 P.2d at 218.

Under Kansas law, a physician has a duty to use reasonable and ordinary care and diligence in the diagnosis and treatment of his or her patients, to use his or her best judgment, and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other physicians in the same or similar locations under like circumstances. *Durflinger v. Artiles,* 234 Kan. 484, 489, 673 P.2d 86, 92 (1983). What constitutes "the reasonable and ordinary care of physicians in the same or similar locations under like circumstances" is to be

established by the use of expert testimony. *Chandler v. Neosho Memorial Hospital,* 223 Kan. 1, 5, 574 P.2d 136, 139 (1977).

Expert testimony is also required to show that the physician breached the duty owed, or in other words that he or she failed to use reasonable care in the diagnosis and treatment of the patient. Finally, expert testimony is necessary to establish that there is a causal connection between the breach and the injuries sustained. This causal connection is equated with the term proximate cause, which is a cause that in the natural and continuous sequence of events produces the injury, and without which the injury would not have occurred. *Sharples,* 249 Kan. at 295, 816 P.2d at 397. Negligence is never presumed and may not be inferred merely from a lack of success or an adverse result from treatment. *Bacon v. Mercy Hospital of Ft. Scott, Kan.,* 243 Kan. 303, 307, 756 P.2d 416, 420 (1988). Nor does liability arise if the adverse result is due to some cause other than treatment by the physician. *Durflinger,* 234 Kan. at 489, 673 P.2d at 92. A physician is only at fault when his negligence is shown to have caused or contributed to the plaintiff's injury. *Sharples,* 249 Kan. at 295, 816 P.2d at 397 (citing *Allman v. Holleman,* 233 Kan. 781, Syl. 4, 667 P.2d 296 (1983)).

In the pretrial order, plaintiff alleges that Dr. Bigler and Dr. Welch breached a duty of care owed to her in the following manner: (1) by failing to properly care for and treat plaintiff's condition; (2) by failing to timely diagnose plaintiff's condition; (3) by failing to perform proper diagnostic testing upon plaintiff; (4) by failing to treat or in any way prevent plaintiff's development of RSD; and (5) by failing to obtain timely consultations from appropriate specialties or properly refer plaintiff to the appropriate specialists for treatment of her developing RSD. Plaintiff further alleges that as a proximate result of defendants' negligence, she suffers the permanent and disabling effects of RSD in its acute stage. Plaintiff asserts that she has offered expert testimony to establish both

---

2. An exception to this rule exists where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience. *Webb v. Lungstrum,* 223 Kan. 487, 490, 575 P.2d 22 (1978); *Karrigan v. Nazareth Convent & Academy, Inc.,* 212 Kan. 44, 48–51, 510 P.2d 190 (1973). The plaintiff does not contend that this exception applies here.

negligence and causation. The court examines the allegations against each doctor in turn, viewing the evidence, as it must, in the light most favorable to plaintiff.

### A. Claims Against Dr. Bigler

#### 1. Breach of Duty

Dr. Bigler argues that plaintiff has not established that he has deviated from an acceptable standard of care or that any alleged deviation is causally connected to plaintiff's injuries. The court finds that plaintiff has not offered expert testimony in support of four of the five grounds she alleges give rise to a breach of duty on the part of Dr. Bigler.[3] Although plaintiff's expert, Dr. Stanton–Hicks, testified that Dr. Bigler failed to obtain timely consultations from appropriate specialties or to properly refer plaintiff to appropriate specialists, plaintiff's expert has not established that the doctor improperly failed to diagnose plaintiff's condition, treat her condition, prevent RSD, or that he failed to employ the appropriate diagnostic tests.

A careful reading of Dr. Stanton–Hicks deposition indicates that he did not believe Dr. Bigler breached a duty to firmly diagnose plaintiff's condition as RSD, but that he breached a duty to determine why plaintiff was not resolving from a routine surgery procedure and to refer plaintiff to another physician to determine the cause of her condition. He was not critical of Dr. Bigler's treatment of plaintiff, nor did he express an opinion that Dr. Bigler failed to prevent plaintiff's development of RSD. Dr. Stanton–Hicks testified as follows:

Q: And in this case, even utilizing hindsight, can you tell me when the acute phase began of RSD in your opinion?

A: Well, my criticism is not with the early recognition of RSD because I don't expect people to recognize it with these early stages. I am only critical that there is a delayed healing taking place in this particular instance, and there's some abnormal signs and symptoms appearing three months after surgery.

(Stanton–Hicks Depo. at 59.)

Q: And what is it that you do have criticism of Dr. Bigler about?

A: Of failing to have a suspicion as to why the patient was not resolving from a routine surgical procedure ...

Q: I need to know specifically from you as nearly and as articulately as you can express it what it is that you felt that Dr. Bigler did or failed to do in the appropriate treatment of Mrs. Rios.

A: That he did not seek assistance from another surgeon or another physician to undertake and conclude a treatment protocol, whether it's surgery or medicine, of a condition affecting a patient, and that standard is set for each particular area or discipline of medicine in the community.

(Stanton–Hicks Depo. at 77–8).

In essence, plaintiff's expert testified that RSD is a chameleon that is difficult to diagnose. He did not criticize Dr. Bigler's failure to firmly diagnose RSD, but, rather, stated that he believed the breach of care occurred as of December 18, 1990, when Dr. Bigler failed to address the fact that plaintiff was not progressing properly. He believed that as of the December visit, Dr. Bigler should have known that RSD was a potential cause of plaintiff's problems, and that he should have referred plaintiff to a specialist or sought the advice of a specialist to determine the reasons for her condition.[4]

---

3. In considering whether there has been expert testimony in support of the various elements of plaintiff's claims, the court has considered all of the testimony from experts of both plaintiff and defendants. However, because plaintiff has designated Dr. Stanton–Hicks as her standard of care expert, the only testimony the court can properly consider on this particular issue is that of Dr. Stanton–Hicks and that of the defendants' experts. As is explained in Part VI of this order, plaintiff cannot argue that Dr. Herrera would present any additional relevant evidence on the issue of the standard of care required of either Dr. Bigler or Dr. Welch.

4. See Stanton–Hicks depo. at 91. "Q: When this case is tried you will not express an opinion that Dr. Bigler deviated from the standard of care any time prior to December 18, 1990, will you? A: No."

Plaintiff argues Dr. Stanton–Hicks has testified that if Dr. Bigler acknowledges he is qualified to recognize and treat RSD, then he is guilty of "extraordinary negligence" for failing to recognize signs of RSD in plaintiff and failing to take corrective measures. In support of this proposition plaintiff cites to Dr. Stanton–Hicks' Affidavit. The affidavit states:

> In my opinion, Dr. Bigler failed to recognize developing systems that were not consistent with the normal healing process and should have referred this patient for evaluation or obtained a consultation from someone schooled in chronic pain. If Dr. Bigler holds himself out to be an expert in the recognition and treatment of RSD, then he is guilty of extraordinary negligence.... These actions are below any acceptable standard of care for physicians accepting and treating patients such as Gloria Rios.

Plaintiff does not accurately represent the testimony of Dr. Stanton–Hicks. Dr. Stanton–Hicks testified that if Dr. Bigler held himself out as an *expert* in the diagnosis and treatment of RSD, then he was negligent. Plaintiff has produced no evidence that Dr. Bigler ever held himself out as an expert in the treatment of RSD, nor does Dr. Stanton–Hicks testify that knowledge of RSD, or the ability to recognize a potential case of RSD, is sufficient to make one an expert. All evidence before the court indicates that Dr. Bigler was not such an expert. Dr. Bigler denies that he is an expert on RSD and testified that he had never treated a confirmed case of RSD, and that if he believed a patient had either stage two or three RSD, he would refer that patient to a specialist. *See* Bigler Depo. at 26–7.

Finally, plaintiff argues that Dr. Stanton–Hicks has corrected and supplemented his deposition testimony in an errata sheet that is now before the court, and his corrected testimony supports plaintiff's claims of a failure to diagnose and treat her properly. The errata-sheet indicates that all of Dr. Stanton–Hicks' opinions were based solely on medical records and that he did not consider the testimony of Gloria Rios. Plaintiff seems to argue that she complained of symptoms which were not recognized nor recorded by Dr. Bigler, and that the doctor's failure to diagnose these complaints as RSD fell below the standard of care.

Plaintiff states that she complained of burning pain, while Dr. Bigler has testified that she did not make such a complaint. There is expert testimony in the record that such a complaint would be indicative of RSD and not of conversion hysteria. However, there has been no expert testimony to establish that if Dr. Bigler recognized the "burning" pain he had a duty to diagnose RSD, or that his failure to more fully recognize the extent of plaintiff's pain fell below the standard of care. It is not sufficient for plaintiff to state that her expert's testimony was limited. The court cannot infer that absent the limitations mentioned the expert would have been more critical of Dr. Bigler's care. Plaintiff must affirmatively offer proof that if other factors are considered, Dr. Bigler deviated from the standard of care by acts or omissions other than an alleged failure to refer plaintiff to a specialist. Plaintiff has not met this burden.

Thus, the court finds that plaintiff has offered evidence of a breach of duty due to a failure to recognize the possibility that RSD was responsible for plaintiff's condition and a failure to then refer plaintiff to a specialist. Plaintiff has produced sufficient evidence that her transfer to the care of Dr. Welch does not qualify as a referral to a proper specialist, for Dr. Stanton–Hicks testified that it appeared that plaintiff's care was transferred over to Dr. Welch as Dr. Bigler's successor and not in the context of seeking a second opinion, and that such a "referral" was insufficient to meet the standard of care. Plaintiff has not shown that there has been a breach by way of a failure to diagnose, failure to treat, failure to perform the proper diagnostic tests, or failure to prevent RSD, and Dr. Bigler is entitled to judgment in his favor on these issues.

### 2. Causation

The issue of causation is a complicated one as it relates to Dr. Bigler's alleged failure to consult with or refer plaintiff to another qualified physician. Dr. Stanton–Hicks testified

that he could not state whether the outcome of plaintiff's treatment would have been any different had she been referred to a specialist by Dr. Bigler. However, plaintiff points out that defendants' experts testified that when a patient is in stage one RSD there is a 75 to 80 percent chance that the condition could be reversed with the proper treatment. The experts also stated that the percent chance of reversal of the condition decreases with time, and that by the time a patient is in stage three of the disease, there is little chance the condition will remit. Issues of fact remain as to when plaintiff began to manifest symptoms of RSD or when she entered stage one of the disease. From the evidence before the court, a reasonable juror could conclude that plaintiff was in early stage one when she was treated in December of 1990. Thus, there is evidence that plaintiff's condition could have been prevented had she received early treatment.

■■■■ Although experts may not speculate on the issue of causation or testify as to possibilities, an indication that a result is reasonably probable is sufficient to satisfy plaintiff's burden for purposes of this motion. *See Sharples,* 249 Kan. at 296, 816 P.2d at 397; *Bacon,* 243 Kan. at 308, 756 P.2d at 420. No particular words of art are necessary to express the degree of proof required, and it is sufficient if the expert's words can be interpreted to show reasonable probability. *Id.* Words and phrases such as "probably" and "more likely than not" may be sufficient. *Id.*

■■■ The evidence before the court presents a close question on the issue of causation. Although plaintiff has not elicited testimony from its own expert which would clearly establish that Dr. Bigler's acts or omissions contributed to plaintiff's injuries, the court finds that, as a whole, the evidence and all permissible inferences therefrom, sufficiently supports a finding of causation for purposes of this motion. The court is unable,

viewing all evidence in the light most favorable to plaintiff, to conclude that Dr. Bigler's acts or omissions did not contribute to plaintiff's injuries as a matter of law.

### B. Claims Against Dr. Welch

■■■ Plaintiff alleges the same five grounds of negligence on the part of Dr. Welch as was alleged against Dr. Bigler: failure to properly care for and treat plaintiff's condition, failure to diagnose, failure to perform proper testing, failure to treat and prevent RSD, and failure to obtain timely consultations. Once again, Dr. Stanton–Hicks is plaintiff's designated expert to testify as to the standard of care required of Dr. Welch. The court finds that plaintiff has met her burden to produce evidence on three of the five grounds alleged: there is sufficient evidence of a failure to treat plaintiff's condition (or treat plaintiff's RSD) and of a failure to timely refer plaintiff, but insufficient evidence of a failure to diagnose RSD or of a failure to perform the proper diagnostic tests.

Plaintiff's expert specifically testified that Dr. Welch departed from the appropriate standard of care for a general surgeon in the circumstances he was presented with in his treatment of plaintiff.[5] He stated that Dr. Welch should not have placed a splint on plaintiff's arm, nor should he have applied a cast to her arm. *See* Stanton–Hicks Depo. at 93–94, 104. He also expressed an opinion that Dr. Welch should have referred plaintiff to another physician or sought information from a specialist. He stated, ". . . and that while I was critical of Dr. Bigler not seeking another opinion, I could not understand why Dr. Welch did not even seek—go further with this because of the increasing length of time that had now elapsed and the worsening symptoms because these symptoms were much more pronounced. . . ." *See* Stanton–Hicks Depo. at 110. In his errata sheet and his affidavit the doctor clarifies his previous testimony by stating specifically that Dr.

5. This testimony and the reasonable inferences arising therefrom, support plaintiff's contention that Dr. Welch failed to treat plaintiff's condition properly and that he failed to treat RSD. The first ground and third ground upon which plaintiff alleges a breach of duty overlap. There is, however, some distinction between a failure to treat RSD and a failure to treat a "condition." The court finds that plaintiff is entitled to offer evidence on both her first and fourth theories of liability as set forth in the pretrial order.

Welch fell below the standard by failing to obtain a consultation with another physician as plaintiff's symptoms persisted. Thus, plaintiff is entitled to offer evidence on the first, fourth and fifth grounds upon which she alleges a breach of duty in the pretrial order.

■ The court finds in favor of defendant Dr. Welch's position as to grounds two and three, for plaintiff's standard of care expert did not establish that Dr. Welch had a duty to perform tests that were not performed, nor that he had a duty to firmly diagnose plaintiff's condition as RSD. Dr. Stanton–Hicks approved of the tests that were performed by Dr. Welch, and did not indicate that there were alternative tests which should have been ordered but were not.[6] In addition, Dr. Stanton–Hicks testified at various times that he was not critical of Dr. Welch's failure to firmly diagnose RSD.[7] Dr. Stanton–Hick's testimony as contained in the affidavit that there was an overall failure to determine the cause of plaintiff's condition and to treat it, is not sufficient to overcome the specific testimony that there was no failure to diagnose or to perform appropriate diagnostic tests.

■ In his deposition, Dr. Stanton–Hicks is not at all critical of Dr. Welch's failure to diagnose RSD. In an affidavit signed after the filing of summary judgment motions, he attempts to qualify his unqualified deposition testimony by stating "if doctor Welch holds himself out as qualified to recognize and treat RSD, then he is guilty of failing to properly diagnose RSD." Dr. Stanton–Hicks was asked repeatedly in the deposition if he was critical of either Dr. Bigler or Dr. Welch for a failure to diagnose, and repeatedly and consistently answered no. He never stated that his opinions would change if Dr. Welch

possessed more knowledge than what is reasonably required of a general surgeon practicing in Garden City, Kansas.[8] Plaintiff had the opportunity to elicit such testimony, but did not do so.

Dr. Stanton–Hicks' general criticisms of Dr. Welch as stated in the affidavit attempt to cloud the issues of whether there was a failure to diagnose and whether there was a failure to perform proper diagnostic tests. The court is convinced that this is an attempt to create sham fact issues. *See Alvarado v. J.C. Penney Co., Inc.,* 768 F.Supp. 769, 775 (D.Kan.1991) ("[S]ummary judgment cannot be resisted through the use of a contrary affidavit after a party provides clear answers to unambiguous questions in a deposition if the trial court concludes that the contrary affidavit contributes to an attempt to create a sham fact issue.") (citing *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986)); *see also Independent Drug Wholesalers Group, Inc. v. Denton,* 833 F.Supp. 1507, 1521 (D.Kan. 1993). The court will not interpret Dr. Stanton–Hicks' general conclusions in the affidavit as evidence of a failure to diagnose or to perform proper tests.

Plaintiff argues that the court must consider the additional information contained in the errata sheet, and that this information supports her charge that Dr. Welch breached a duty to diagnose her condition. Although the errata sheet, like the affidavit, may be used to correct errors or to clarify or change an answer when a question is misunderstood, it may not be used to allow a person to alter what has been said under oath. *Greenway v. International Paper Co.,* 144 F.R.D. 322, 325 (W.D.La.1992) ("A deposition is not a take home examination."). The court will only consider those changes which clarify the de-

---

**6.** The court was not presented with the entire deposition of Dr. Stanton–Hicks, but the court has thoroughly examined all portions submitted by both plaintiff and the defendants. The court can only consider that testimony which it has before it.

**7.** *See* Depo. at page 94, "Q: I've listened to you for several hours now and I believe you have said that you are not critical of the physicians in this case for failing to make a diagnosis of reflex sympathetic dystrophy? A: No. Q: That's cor-

rect? A: That is correct," and at page 109, "Q: And I understand also you're not critical of Dr. Welch for not making a firm diagnosis? A: No, not at all."

**8.** Moreover, there is absolutely no evidence that Dr. Welch is or holds himself out to be especially knowledgeable of RSD and treatment of the disease. Dr. Welch's testimony that he does not consider himself qualified to make a firm diagnosis of RSD or to treat the condition is uncontroverted.

position, and not those which materially alter the deposition testimony as a whole.

The court rejects plaintiff's argument that this errata sheet establishes that a duty to diagnose existed or was breached. For one, Dr. Stanton–Hicks' testimony that Dr. Welch's failure to diagnose RSD was not a deviation from the standard of care, was clear and unqualified. If plaintiff contends this errata sheet may be used to alter this testimony, her argument is rejected. Plaintiff had a full opportunity to cross-examine this witness at the deposition to elicit any additional opinions and chose not to do so. Allowing such a change would deprive defendants of any opportunity to inquire as to the basis or substance of this new opinion. Moreover, the court does not believe that the testimony in the errata sheet (or the affidavit for that matter), even if considered, sufficiently establishes that Dr. Welch deviated from the standard of care by a failure to diagnose. Thus, the court finds that plaintiff has not met her burden to offer expert testimony as to the breach of a duty of care due to a failure to diagnose or to perform proper tests, and Dr. Welch is entitled to partial summary judgment on these two issues as a matter of law.

 On the issue of proximate cause, the court finds that plaintiff has produced sufficient evidence that Dr. Welch's acts or omissions caused or contributed to plaintiff's injuries. Although his testimony was unclear at times, Dr. Stanton–Hicks did testify that, to a reasonable degree of medical probability, placing a cast on plaintiff caused her harm. There was also testimony from which a reasonable juror could conclude that plaintiff was in phase one of RSD at the time she was referred to Dr. Welch and that if she had been treated for RSD (by doctor Welch or another physician), she could have either prevented her present condition or lessened her injuries.

*IV. Compensatory Damages*

 Plaintiff asserts a claim for household and personal services of $357,-504.00. In addition, she asserts that because her husband is required to provide these services to her, she is entitled to receive compensation for his loss of income in the amount of $384,800.00. Dr. Welch argues that plaintiff may only recover the cost of reasonable household and personal services and that her claim for her husband's loss of income is improper.

The court finds that plaintiff's claim for the costs connected to the personal care she requires as a result of her injuries is proper. *See Shattuck v. Pickwick Stages Corp.,* 135 Kan. 602, Syl. 3, 11 P.2d 996 (1932). It is irrelevant whether these services are provided by her husband voluntarily or whether she has to pay someone to perform them. *Id.; see also* 90 A.L.R.2d 1323–1339 (1963 & 1993 Supp.). However, the court finds that she is not entitled to recover for her husband's lost wages as a result of his voluntary decision to leave his job and act as the care provider.

The rationale behind allowing a claim for household and personal services is to provide a plaintiff with sufficient compensation to hire someone to perform those services the plaintiff is no longer able to perform as a result of his or her injuries. To allow plaintiff to choose her husband as the service provider and claim an additional loss as a result, would in essence provide plaintiff with a double recovery. Plaintiff cites no support for the proposition that her husband's loss of income is a proper component of a loss of services claim and the court has found none. Plaintiff cites *Shattuck v. Pickwick Stages Corp.,* to support her belief that she may recover for her husband's loss of income in addition to the reasonable cost of household care. Plaintiff's argument is unpersuasive. In *Shattuck,* the plaintiff was allowed $75.00 to hire a nurse even though her husband provided the services, but the Kansas court specifically stated that "[h]e was awarded nothing for loss of time from business or occupation," and impliedly approved such a determination of damages. 135 Kan. at 604, 11 P.2d 996.

The court finds that plaintiff may only recover for reasonable household and personal services and may not claim an additional recovery for the loss of her husband's income, and rules in favor of defendant Dr.

Welch on this issue. *In accord Jackson v. United States,* 526 F.Supp. 1149, 1154 (E.D.Ark.1981) (plaintiff could recover for caretaking expense in home, but could not recover for the loss of wife's salary), *aff'd,* 696 F.2d 999 (8th Cir.1982); *Byrne v. Pilgrim Medical Group, Inc.,* 187 N.J.Super. 386, 454 A.2d 920, 922 (1982).

*V. Punitive Damages*

Plaintiff claims that both Dr. Bigler and Dr. Welch acted in a wanton manner in their treatment of plaintiff and that such conduct entitles her to punitive damages. She claims first that defendants failed to act in her best interest with knowledge that the failure to take corrective action could have disastrous consequences. Second, she alleges that they intentionally concealed from her that they believed she had a psychological disturbance and that they were placating her and not treating her medical condition. Defendants contend that there has been no evidence presented of wanton conduct and that plaintiff's claims for punitive damages should be dismissed.

■ In Kansas, punitive damages are awarded to punish the wrongdoer for malicious, willful or wanton invasion of another's rights, and the purpose of such damages is to deter others from the commission of similar wrongs. *Folks v. Kansas Power and Light Co.,* 243 Kan. 57, 72, 755 P.2d 1319, 1332 (1988). At trial, plaintiff bears the burden of proving that the defendant acted toward her with willful or wanton conduct by clear and convincing evidence. K.S.A. 60–3702 (Supp. 1992).

■ In this case, plaintiff does not assert that the defendants' conduct was willful, but rather that it was wanton. To be wanton, the acts alleged must show more than a lack of due care. The act must indicate a realization of the imminence of danger, and a reckless disregard, complete indifference or an unconcern for the probable consequences of the wrongful act. K.S.A. 60–3401(f); *Bowman v. Doherty,* 235 Kan. 870, 876–77, 686 P.2d 112, 118 (1984). Plaintiff's claim for punitive damages survives a motion for summary judgment if a reasonable juror could find from the evidence that the defendants acted in a wanton manner by clear and convincing evidence. *Fusaro v. First Family Mortgage Corp.,* 17 Kan.App.2d 730, 733, 843 P.2d 737, 740 (1992); *see also Johanson v. Colt Industries Operating Corp.,* 797 F.2d 1530, 1536 (10th Cir.1986) (applying Kansas law).

■ Plaintiff contends that defendants did not act in her best interests even though they knew that a failure to take corrective action would have dire consequences, and that this behavior was wanton. The court finds plaintiff has not met her burden to show that Dr. Bigler and Dr. Welch failed to take corrective action, but rather has only shown that they took certain actions that may or may not have been negligent. Nor has plaintiff shown that the doctors were aware that the failure to take actions that they did not take posed a serious threat to the health of plaintiff. Plaintiff has not met her burden to shown that either doctor had knowledge of the imminence of danger caused by the actions they were taking or that, despite knowledge of the severity of plaintiff's condition, they recklessly failed to act or were indifferent.

Plaintiff argues, and both doctors admit, that they possess knowledge sufficient to at least suspect RSD or make a tentative diagnosis and that they are aware of the seriousness of the disease. There is some evidence in the record that a diagnosis of conversion hysteria is more properly made by a psychiatrist, not a general surgeon. There is also evidence that the plaintiff was taking an unusually long time to recover from a routine surgery. Finally, plaintiff has testified that she complained of certain symptoms, for instance a burning pain, and that some of these complaints were ignored. Plaintiff argues that, from this evidence, a reasonable jury could conclude that defendants were indifferent to plaintiff's complaints and that they recklessly misdiagnosed her condition as conversion hysteria. The court disagrees.

Wantonness "refers to the mental attitude of the wrongdoer rather than a particular act of negligence." *Gould v. Taco Bell,* 239 Kan. 564, 571, 722 P.2d 511, 517 (1986). Acts taken may indicate wanton conduct, but a

reckless disregard and indifference may also be inferred from a failure to act when action is called for to prevent injury. *Id.* Plaintiff's only evidence that the doctors failed to act is her testimony that some of her complaints of pain were trivialized or ignored by the doctors. Testimony by the doctors and that of plaintiff's expert indicate that the doctors listened to her complaints of pain, but that they concluded her pain was indicative of something other than RSD. There is no evidence that either doctor knew that they were unable to diagnose plaintiff's condition or that she was presenting with symptoms absolutely indicative of RSD and that these doctors refrained from acting in any event.

All of the evidence presented, including the testimony of plaintiff, indicates that the doctors were treating the plaintiff and actively attempting to diagnose her condition. Appointments were scheduled by the doctors on a regular basis and some form of treatment continued uninterrupted for seven months. There is ample evidence that the doctors performed tests, prescribed physical therapy, and prescribed certain drugs or medications. Plaintiff's assertion that her pain was not recognized, standing alone, is simply insufficient to overcome the clear evidence that she was continuously cared for by these doctors and to establish that the "mental attitude" of either Dr. Bigler or Dr. Welch approached wantonness.

As to plaintiff's second contention, it is undisputed that Dr. Bigler and Dr. Welch concealed from plaintiff that they believed she had "conversion hysteria" and not RSD. However, plaintiff has not produced any evidence that the withholding of such information was negligent, let alone exhibits wanton behavior. The only evidence before the court is that when conversion hysteria is diagnosed, the treating physician has the option to either inform the patient of the diagnosis or withhold the information. Defendants' experts testified that it is proper not to confront a patient with conversion hysteria because it might anger the patient or disrupt patient/physician communication. Plaintiff

has presented no evidence that withholding the information is improper.

The court cannot find that a reasonable view of plaintiff's evidence supports a finding that the doctors' conduct was anything more reprehensible than negligence. Punitive damages may not be assessed against "one who acts under innocent mistake in engaging in conduct that nevertheless constitutes a tort." *Iola State Bank v. Bolan,* 235 Kan. 175, 192, 679 P.2d 720 (1984). Thus, the court finds that plaintiff has not met her burden to show she is entitled to take her punitive damage claims to the jury, and defendants' motion for partial summary judgment on this issue is granted.[9]

## VI. Designation of an Additional Expert Witness

Plaintiff moves the court for an order allowing Dr. Herrera to testify as an expert witness on the standard of care of the defendants. Although Dr. Herrera has been identified as an expert witness, he is not designated to testify as to the standard of care required of the defendants. As of the date of the pretrial order, it was understood by all parties that Dr. Herrera would not express an opinion as to the standard of care. Defendants argue that allowing Dr. Herrera to be designated as an additional standard of care expert at this late date would be extremely prejudicial and would allow plaintiff to circumvent the rules of procedure established in this court.

In essence, plaintiff asks the court to amend the pretrial order to allow plaintiff to designate this expert for a new purpose at this late date. The decision to allow or prohibit the testimony of witnesses not described in the pretrial order rests within the sound discretion of the trial judge. *Perry v. Winspur,* 782 F.2d 893, 894 (10th Cir.1986). The pretrial order shall be modified only to prevent manifest injustice. Fed.R.Civ.Pro. 16(e).

---

**9.** The court notes that its decision does not turn on application of the "clear and convincing" standard as articulated by the Kansas Court of Appeals in *Fusaro,* but, rather, the court finds

that plaintiff's evidence is insufficient to survive this motion even if it were to apply a preponderance of the evidence standard.

This case was originally filed on February 5, 1993. Plaintiff's amended witness list of September 1, 1993, states only that Dr. Herrera would testify as to his care and treatment of plaintiff. At the pretrial conference plaintiff represented to all parties and to this court that Dr. Herrera would not offer an opinion as to the standard of care. Plaintiff now, after summary judgment motions have been filed and as the trial date approaches, seeks to redesignate this witness.

The court finds that plaintiff may not designate Dr. Herrera as an additional standard of care expert. Defendants would indeed be unfairly prejudiced by such an addition. The defendants have not deposed or questioned Dr. Herrera on this issue and have no idea what his testimony might be. *See Smith v. Ford Motor Company*, 626 F.2d 784, 789 (10th Cir.1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981) (district court abused its discretion by allowing a medical doctor who had been designated to testify about plaintiff's treatment to testify as to proximate cause).

This motion became ripe for decision a little more than a month before trial, although this case has been on file for more than a year. Counsel for plaintiff's only explanation for such a late filing is that he did not know until January of 1994 that Dr. Herrera was willing to testify as to the standard of care. Counsel states that after his initial meeting with Dr. Herrera in the summer of 1993, at which time the doctor indicated he would not express an opinion as to the standard of care, he did not have an opportunity to speak with Dr. Herrera until January of this year.

Plaintiff's counsel is an experienced attorney, well versed in the procedures established in this court and required by the local rules. Had counsel believed earlier in this case that a second expert was required to establish the requisite standard of care, he could have secured one before the deadline imposed for designating experts. His explanation for not complying with certain time limits is patently insufficient to justify an extension.

In addition, plaintiff has not shown that she would be unfairly prejudiced, let alone

that there would be manifest injustice, if Dr. Herrera is not permitted to testify as to the standard of care. Plaintiff has neither proffered the substance of the expert's testimony, nor has she informed defense counsel of the substance of the doctor's testimony. This court has no basis from which to conclude that the addition of this expert would significantly aid plaintiff in the pursuit of her claim or that it would be anything but cumulative. This court has already ruled that the number of defendants' experts must be limited to avoid cumulative testimony. Plaintiff has made no showing that the testimony of Dr. Herrera is crucial to her case or that he would present any testimony that her other expert is incapable of providing.

The rules regarding the sequence of discovery and the deadlines ordered for the identification of experts may not be taken lightly. The fair and efficient disposition of all cases in this court requires that they be strictly adhered to. For all the reasons set forth above, the court must deny plaintiff's motion to designate Dr. Herrera as an additional standard of care expert.

### VII. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that the motion of defendant, Dr. Bigler, for summary judgment (Doc. # 52) is granted in part and denied in part. Plaintiff is entitled to proceed on her negligence claim against Dr. Bigler on the fifth theory of negligence as alleged in the pretrial order. Plaintiff's claim for punitive damages against Dr. Bigler is dismissed.

**IT IS FURTHER ORDERED** that the motion of defendant, Dr. Lauren Welch, for partial summary judgment (Doc. # 50) is granted in part and denied in part. Plaintiff may proceed on her claim of negligence against Dr. Welch on her first, fourth, and fifth theories of negligence as alleged in the pretrial order. Her punitive damages claim against Dr. Welch is dismissed. Also, Dr. Welch's motion for partial summary judgment of plaintiff's claim for damages for the loss of her husband's income is granted, and plaintiff's claim for such loss is dismissed as a matter of law.

**IT IS FURTHER ORDERED** that plaintiff's motion to designate Dr. Herrera as an additional standard of care expert (Doc. # 57) is denied.

**IT IS SO ORDERED.**