Jo Carolyn **WILEY**, Plaintiff,

v.

Harold R. **BROWN**, Defendant.

Civil A. No. 94–2524–EEO.

United States District Court,
D. Kansas.

Jan. 23, 1996.

James R. Shetlar, Overland Park, KS, for plaintiff.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, for defendant.

*MEMORANDUM AND ORDER*

EARL E. O'CONNOR, District Judge.

This matter is before the court on plaintiff's motion for leave to file a surreply (Doc. # 32) and defendant's motion for partial summary judgment (Doc. # 22). For the reasons set forth below, plaintiff's motion will be granted and defendant's motion will be denied.

Defendant has admitted liability and only the amount of plaintiff's damages remain at issue. Trial of this matter is set for March 4, 1996. Defendant now seeks summary judgment on any claim by plaintiff that her low back, neck, or knee were permanently injured in the automobile collision with defen-

dant on January 30, 1993, claiming that the record is devoid of evidence to support such a claim. In support, defendant points to the deposition testimony of plaintiff's only medical expert, Dr. Theodore Sandow, M.D., wherein Dr. Sandow stated that he could not opine with a reasonable degree of medical certainty that plaintiff suffered permanent injuries to her neck, low back, and knee, caused by the accident.

In response, plaintiff refers to a "supplemental" report by Dr. Sandow, dated September 19, 1995. This report is based on Dr. Sandow's examination of plaintiff on September 15, 1995. To create a factual question about whether plaintiff is permanently injured, plaintiff relies on Dr. Sandow's second report, wherein he opines that plaintiff presently suffers from permanent injuries to her low back, neck, and knee.

Dr. Sandow is the sole medical expert designated by plaintiff. Apparently, Dr. Sandow's deposition was intended by both parties to be an evidentiary deposition to be used at trial—plaintiff's supplemental witness and exhibit list indicates that Dr. Sandow is expected to testify by evidentiary deposition and defendant refers to the deposition in a similar fashion. Dr. Sandow indicated in the deposition that a further examination of the plaintiff would be required to answer some of defendant's questions about permanent injuries, future medical expenses, and whether plaintiff will need surgery. However, Dr. Sandow also indicated that plaintiff had not, at the time of the deposition on June 28, 1995, scheduled an appointment to see him.

In his first report, dated October 14, 1994, Dr. Sandow noted:

> The patient related to me that her right knee was jammed against the dashboard in this injury.... I felt that she did have traumatic chondromalacia of her patella....

> At the present time the patient continues to have residual symptoms in the neck, low back and the knee. She has some restricted motion in her neck, she will experience some low back ache on a daily basis, and because of the prolonged time that her

symptoms have remained I expect that she will have some permanent symptoms.

> I feel she will require periodic conservative treatment of her neck and low back with physical therapy and medications. There is a possibility that the patient may require arthroscopic evaluation and surgery of her right knee.

> It is my opinion that the patient indeed suffered the injuries to her neck, low back and her right knee in the automobile accident which occurred in January of 1993.... I do expect that she will have some permanent impaiarment [sic] because of the persistence of these symptoms which I would rate as a twelve percent (12%) whole body permement [sic] physical impairment....

However, in his deposition on June 30, 1995, Dr. Sandow stated that he could not offer an opinion, based on any specific medical findings, about whether any of plaintiff's medical complaints were caused by the January 30, 1993, automobile accident. He also stated that he could not offer an opinion to a reasonable degree of medical probability that plaintiff suffered permanent injuries, would need knee surgery, or would need future treatment.

Subsequently, in his second report dated September 19, 1995, Dr. Sandow noted that he re-evaluated plaintiff on September 15, 1995, and that she had "three main outstanding complaints" regarding her neck, low back, and knee. Sandow took X-rays of plaintiff's back and offered the following opinions:

> The x-ray findings ... would suggest that the patient suffered an injury or tear to the anterior longitudinal ligament in her motor vehicle accident of January 30, 1993. The patient's knee symptoms are still consistent with traumatic chondromalacia caused by the right knee trauma [which] occurred when her knee was jammed into her dashboard in her motor vehicle accident of January 30, 1993.

> The patient does demonstrate significant x-ray findings in the cervical and lumbar spine. At this point there is no objective evidence of nerve root compression in either the neck or lumbar area. However, if

either condition progresses with further pain and/or nerve root irritation it may be necessary to consider not only conservative treatment, but possible surgical intervention in both areas.

The knee problem is unchanged from previous evaluations, but again if symptoms should progress then further physical therapy and anti-inflammatory medication should be utilized. If conservative management should fail to control the knee symptomatology then consideration would be given to arthroscopic chondroplasty. All of the injured areas have chronic symptoms which will certainly either occasional [sic] or frequently require conservative treatment.

Sandow's report concluded by comparing the findings of plaintiff's x-ray taken on September 15, 1995, with a 1980 lumbar myelogram, which was normal, and stating,

It is my impression that the x-ray findings of the lumbar spine more than likely predated her injury of January 30, 1993, but were aggravated by this injury. The x-ray findings now in the cervical spine I think are directly related to her auto accident as is the traumatic patellar chondromalacia.

■ Defendant complains that plaintiff may not use a "supplementary" report to controvert testimony given by Dr. Sandow at his evidentiary deposition on June 28, 1995.[1] Defendant contends that after Dr. Sandow stated that he could not offer opinions to a reasonable degree of medical probability that plaintiff suffered permanent injuries caused by the accident, will need knee surgery, or will need future medical treatment, defendant notified plaintiff by letter dated July 5, 1995, that he would not contest liability and would rely on Dr. Sandow's testimony "to establish that there are no permanent injuries of any kind," rather than designating a separate expert. In the same letter, defendant indicated that he would oppose any attempt by plaintiff to "schedule another examination to provide an additional factual basis for any new opinions by Dr. Sandow."

Defendant complains that plaintiff did just that and is now trying to sidestep the discovery deadlines by characterizing Dr. Sandow's new report as a "supplement" to his earlier report. Defendant argues that Dr. Sandow's second report is contrary to statements made during his deposition and that the second report, in effect, renders his deposition a nullity.

■ In *Rios v. Welch*, 856 F.Supp. 1499, 1502 (D.Kan.1994), this court held,

It is the court's belief that a plaintiff is not permitted to virtually rewrite portions of a deposition, particularly after the defendant has filed a summary judgment motion, simply by invoking the benefits of Rule 30(e). . . . A deposition is not a 'take home examination' and an 'errata sheet' will not eradicate the import of previous testimony taken under oath.

*See also, Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D.La.1992) (Rule 30(e) permits deposition changes to correct substantive errors by the reporter, but does not permit a deponent to "alter what was said under oath.")

Although plaintiff is not attempting to change Dr. Sandow's deposition through corrections under Rule 30, the practical effect of Dr. Sandow's second report tends to lead to such a result. Nevertheless, we cannot say that the instant case falls clearly within a sham fact issue under the factors set forth in *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986). In *Franks*, the court discussed conditions under which an affidavit, which is based on newly discovered evidence, but contradicts earlier unequivocal deposition testimony, may be considered with regard to a motion for summary judgment. *Id.* Arguably, Dr. Sandow's second report falls within this category. Dr. Sandow did not make unequivocal statements in the deposition, but stated that he would need to reexamine plaintiff to answer some of defendant's questions regarding plaintiff's present condition and future medical needs.

---

1. Based on Dr. Sandow's "supplementary" report, plaintiff's damages expert, Dr. Janice Grebe, P.H.D., generated a "supplementary" report as well. Grebe's supplementary report increases plaintiff's projected damages four-fold, from an average of $33,180 to an average of $144,338.

 We believe that if reexamination was necessary for Dr. Sandow to offer opinions on key issues in the case, plaintiff should have had Dr. Sandow conduct an examination *before* his deposition. It is not altogether clear on the present record whether plaintiff now plans to call Dr. Sandow to testify at trial, or exactly how plaintiff plans to address the doctor's second report. In any event, if plaintiff plans to use any evidence beyond Dr. Sandow's deposition testimony, defendant has a right to further depose Dr. Sandow regarding his most recent report. If defendant chooses to redepose Dr. Sandow, plaintiff will be required to pay Dr. Sandow's witness fee and the attorney's fees of defendant's attorney for the second deposition. Said deposition shall not delay the present trial setting of March 4, 1993.

Under all the circumstances, granting summary judgment on the present record is too harsh a remedy for plaintiff's failure to properly prepare her expert for his deposition. Granting defendant leave to redepose Dr. Sandow at plaintiff's expense would appear to cure any prejudice to defendant caused by Dr. Sandow's second examination and later report. Although we note that portions of defendant's motion appear to have some merit even in light of Dr. Sandow's most recent report, we believe that defendant's motion for summary judgment should be denied without prejudice at this time.

With regard to Dr. Grebe's qualifications and the admissibility of her testimony, the court believes it will be in a better position to rule on those issues at trial. Defendant may raise those issues in an appropriate motion at that time.

IT IS THEREFORE ORDERED that defendant's motion for partial summary judgment (Doc. # 22) is denied without prejudice.

IT IS FURTHER ORDERED that plaintiff's motion for leave to file a surreply (Doc. # 32) is granted. The clerk is directed to file the surreply attached to plaintiff's motion for leave to file.

IT IS FURTHER ORDERED that, under the conditions set forth herein, defendant is hereby given leave to take the supplemental deposition of Dr. Theodore Sandow. Plaintiff shall bear all witness costs and attorney's fees of the supplemental deposition.