Arcenio E. GARCIA, Plaintiff–
Appellant,

v.

**PUEBLO COUNTRY CLUB,**
Defendant–Appellee.

No. 01–1363.

United States Court of Appeals,
Tenth Circuit.

Aug. 21, 2002.

James A. Carleo, Pueblo, CO, for Plaintiff–Appellant.

John J. Keilbach of Altman, Keilbach, Lytle, Parlapiano & Ware, P.C., Pueblo, CO, for Defendant–Appellee.

Before SEYMOUR, McWILLIAMS, and HENRY, Circuit Judges.

HENRY, Circuit Judge.

Arcenio E. Garcia, alleging violations of the Civil Rights Act of 1991 (42 U.S.C. § 1981) and/or the Age Discrimination Employment Act (the "ADEA," 29 U.S.C. § 621), sued the Pueblo Country Club ("PCC"). In his complaint, Mr. Garcia charged that PCC terminated him from his position as Grounds Maintenance Superintendent and subsequently failed to hire him as Golf Course Superintendent based upon his race, national origin, and/or age. The district court granted summary judgment to PCC. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court's dismissal and remand the case to the district court.

## I. BACKGROUND

Mr. Garcia, who is in his early sixties, is a "Hispanic" male who worked for PCC in various capacities for over forty years. Aplt's Br. at 3. According to Mr. Garcia's complaint, at the time of his termination, in June of 1998, his position was that of Grounds Maintenance Superintendent,[1] a position that he had held since 1989. Mr. Garcia consistently received positive if not glowing recommendations from PCC in all areas of job performance. He also received high praise from club members and the Board of Directors.

Since 1985, PCC had been considering the installation of a new irrigation system to improve the soil conditions of its golf course. The Board minutes reflect that, in

---

1. The actual title Mr. Garcia held is uncertain, but the title averred in the complaint is that of Grounds Maintenance Superintendent. *See* Aplt's App. vol. 1, ex. 2, at 2 (Complaint). The district court, and Mr. Garcia on appeal, noted that Mr. Garcia's title at the time of termination was Golf Course Superintendent. Various evaluation reports and correspondence utilize an assortment of job titles including: "Grounds Supr.," *id.* vol. 2, ex. 1, at 8, 10, 12, 14, 32; "Interim Grounds Supervi-sor," *id.* at 34; "Grds Supervisor," *id.* ex. 13, at 2; "Greens Superintendent," *id.* ex. 2, at 4; "Head Grounds Keeper," *id.* at 14; "Golf Course Superintendent," *id.* at 15; *id.* ex. 4, at 7 (Golf Course Superintendent job description). In his opening appellate brief, Mr. Garcia refers to his position as "Golf Course Superintendent" and notes that the position is "also called Grounds Superintendent." Aplt's Br. at 3.

1997 and after considering presentations and proposals from its Long Range Planning Committee, PCC proceeded to put the new irrigation system to a membership vote. The membership approved a plan with an estimated cost of $2.5 million. In conjunction with the adoption of the modernized irrigation system, the Board also "consider[ed] hiring a new person to run [the] course." Aplt's App. vol. 2, ex. 5, at 3. In March of 1998, after considering at least two drafts, the Board finalized the job description for the Golf Course Superintendent position, and, in June of 1998, PCC hired John Finsterwald, a forty-one year old "non-minority" to fill the job. Aplt's Br. at 7.

Mr. Garcia, alleging racial and national origin discrimination under Title VII, 42 U.S.C. § 2000(e) and 42 U.S.C. § 1981, and age-based discrimination under the ADEA, 28 U.S.C. § 621, filed a complaint and an amended complaint. Mr. Garcia later dismissed the Title VII claim. PCC moved for summary judgment on the remaining claims. As noted above, this appeal arises from the grant of that motion and the consequent dismissal of the case.

Mr. Garcia's complaint did not specify how PCC discriminated against him, (e.g., through unlawful termination, failure to promote, to hire, or to rehire). The court reasoned that the "key issue" that would determine how the court would analyze the case was whether the 1998 Golf Course Superintendent position constituted a "new job" for which Mr. Garcia needed to apply to be hired. Aplt's App. vol. 1, ex. 5 (Order, filed May 31, 2001). The district court thus sought supplemental briefing as to whether or not PCC eliminated Mr. Garcia's position when it created the "new" position of Golf Course Superintendent.

After briefing by both parties, the district court, noting the disparity in the job descriptions, determined that Mr. Garcia's position had been eliminated. According-

ly, the district court construed Mr. Garcia's claims to allege that PCC discriminated against him by failing to hire him for the newly created position. The district court then noted that because Mr. Garcia presented no direct evidence of discrimination, the analysis of his claim necessarily would proceed pursuant to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Based upon its conclusions that (1) PCC eliminated Mr. Garcia's original position and (2) Mr. Garcia failed to apply for the new position, the court further concluded that Mr. Garcia was unable to establish a prima facie case for a failure to hire. The district court also entered an alternative finding considering the possibility that Mr. Garcia's position had not been eliminated. Even if this was the case, the district court reasoned, Mr. Garcia, because he could not demonstrate any adverse effect, still could not establish a prima facie case of unlawful discharge. We conclude that (1) whether PCC eliminated Mr. Garcia's job is a disputed issue of material fact, and (2) whether Mr. Garcia can demonstrate an adverse effect from PCC's alleged discrimination is also a disputed issue of material fact; thus, we reverse and remand.

## II. DISCUSSION

We review the grant or denial of a motion for summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying

the summary judgment standard, we must examine the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. *Wolf,* 50 F.3d at 796.

## A. Whether PCC Eliminated Mr. Garcia's Position is a Disputed Issue of Material Fact

### 1. Material Issue of Fact

■ The district court concluded that whether or not Mr. Garcia's position was eliminated was the "key issue" in this case because resolution of that issue would enable the court to determine "whether the case should be analyzed as an unlawful discharge case or a failure to promote, hire, or rehire case." Aplt's App. vol. 1, ex. 5 (Order, filed May 31, 2001).[2] "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 208 (10th Cir.1997). We agree with the district court that the question of job elimination is a material issue of fact in this case.

### 2. Disputed Issue of Fact

■ After noting the significance of job elimination, the district court proceeded to compare the old and new job descriptions. Based on this comparison, the district court determined that, under the new description: "The expectations of the Golf Course Superintendent changed significantly." Aplt's App. vol. 1, ex. 6, at 4 (Order, filed July 12, 2001). The court also noted that the position's upgraded responsibilities and increased salary, coupled with the other major renovations inherent in PCC's long-term plans, supported its finding that the position was a "new" one.

Mr. Garcia challenges the revision of the job description to include vaguely worded duties that had not been part of his maintenance position, namely, "[m]anagement of advanced irrigation system" and "[d]eveloping the Turf Grass Management Program, including ongoing advances in turf grass science." Aplt's App. vol. 2, ex. 4, at 3 (Comparison of Oct. 30, 1997 job description with March 19, 1998 job description). Under Mr. Garcia's allegedly eliminated position, similar duties included "[m]ust have irrigation specialist qualifications" and "[m]ust have turf specialist qualifications." *Id.* Mr. Garcia maintains that he was able to operate the sprinkler system and, as such, possessed the requisite experience to fill the position as it had been revised. Perhaps more importantly, Mr. Garcia points to testimony that indicates his employer believed Mr. Garcia was qualified to perform the duties of the revised position. *See* Aplt's App. vol. 3, ex. 17, at 124–25; 175–76 (Testim. of Club Manager Terry Stuive that he believed Mr. Garcia could complete all of the tasks listed on the revised job description).

In contrast, PCC maintains that the revised job description represented a significant change from the previous position and underscores the new position's forty percent salary increase. PCC also contends that Mr. Garcia, an at-will employee, never applied for the purportedly upgraded position, although he was reminded to do so if interested. In addition, Mr. Garcia "never accepted" the newly created position of Repair/Maintenance Manager. Aple's App. vol. 2, ex. 7, at 4. PCC insists that Mr. Garcia's physical infirmities precluded his ability to perform the duties of either position. Finally, PCC suggests that Mr. Garcia acknowledged the position had been

---

2. We note, as did the district court, that Mr. Garcia's complaint failed to present a specific theory as to the alleged discriminatory act. We agree that the plaintiff avoided articulating a coherent theory for his cause of action and appears to have gone out of his way to be of little or no assistance to the court.

eliminated. *See* Aplts App. vol. 6, ex. 49, at 2.

█ We agree with the district court, that if PCC in fact eliminated Mr. Garcia's position, he is foreclosed from seeking relief under a failure to hire, rehire, or promote claim. To establish a prima facie case for any of these actions, a plaintiff must indicate that he applied for the position in question. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir.2000) ("In *McDonnell Douglas,* the Supreme Court enumerated the elements required in order for a plaintiff to establish a prima facie case in the failure to hire context. These are: (i) plaintiff belongs to a protected class; (ii) plaintiff *applied* and was qualified for a job for which the employer was seeking applicants; (iii) despite being qualified, the plaintiff was rejected; and (iv) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications.") (internal quotation marks and citations omitted) (emphasis added); *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir.2001) ("To establish a prima facie case for failure to promote, plaintiff must show, among other things, that *she applied for— or at least sought*—the position at issue.") (emphasis added); *see also Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1045 (7th Cir.2000) (holding that a plaintiff could not establish prima facie case for failure to rehire claim because the plaintiff "never applied" for position in question). There is no doubt that Mr. Garcia opted not to apply for the "new" position.[3]

█ We acknowledge that PCC may alter or upgrade the responsibilities of its employees, and that courts should "refrain from intruding into an employer's policy apparatus or second-guessing a business's decisionmaking process." *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985); *see Washington v. Board of Pub. Utils.*, 939 F.2d 901, 903 (10th Cir.1991) (affirming a grant of summary judgment to a defendant where the plaintiff produced "no evidentiary matter even suggesting that [defendant's] business decision [to reclassify a position and subsequently phase out a department] was a pretext for the purpose of discriminating against plaintiff"); *Tarshis v. Riese Org.*, 211 F.3d 30, 37 (2d Cir.2000) ("We recognize that a reduction-in-force or restructuring that results in an elimination of jobs often is a legitimate reason for dismissing an employee."), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 996, 152 L.Ed.2d 1 (2002); *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 106 (2d Cir.1989) (federal courts do not have a "roving commission to review business judgments") (internal quotation marks omitted); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."), *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 20 (7th Cir.1987) ("A business decision need not be good or even wise. It simply has to be nondiscriminatory."). On the other hand,

---

3. Mr. Garcia, although he suggests that PCC's invitation to apply for the "new" job was merely "set[ting]" him up to fail," does not raise the argument that his application for the position would have been futile. *Cf. Bennett v. Quark*, 258 F.3d 1220, 1228–29 (10th Cir. 2001) (holding no prima facie case established where "plaintiff failed to show that she applied for the position," and, in considering

the possible application of the "futile gesture doctrine," noting that there was no evidence that "defendant would have discriminatorily rejected plaintiff had she actually applied"); *Brown v. McLean*, 159 F.3d 898, 903–04 (4th Cir.1998) (holding that plaintiff did not meet burden of establishing that defendant's "alleged discriminatory practice prevented him from applying for the [new] position").

we also recognize that an employer should not "be allowed to accomplish an adverse [employment action] with invidious intent through layoff and rehiring when that same action would be impermissible if done in the course of employment." *Tarshis*, 211 F.3d at 38.

■ Our purview is limited, for "whether a new or distinct contractual relationship was formed should not be measured in quantitative terms, like the amount of potential pay increase, but should instead be determined by whether there exists a meaningful, qualitative change in the contractual relationship." *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 802 (10th Cir.1993), *abrogated on other grounds by Buchanan v. Sherrill*, 51 F.3d 227 (10th Cir.1995). "Thus, the inquiry should not be confined to titles but should examine actual changes in responsibility and status." *Hooks*, 997 F.2d at 802; *see Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir.1996) (stating that "the test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position"); *Brown v. McLean*, 159 F.3d 898, 903 (4th Cir.1998) (noting that the "new" position, in failure to hire or promote action filed under Title VII, "encompassed duties that had not been part of the [previous] position that [plaintiff] had held").

■ Although no bright-line test exists for evaluating a qualitative change in an employment relationship, we may consider whether a position that was previously non-supervisory became supervisory, or whether one position was hourly and one salaried. *See Hooks*, 997 F.2d at 802 (noting that "the transition into a supervisory or salaried position implicates a heightened level of responsibility and increased level of accountability to the company"). Here, the record indicates that both positions were supervisory, both were salaried,

and both had seemingly analogous levels of responsibility. As to the actual changes in responsibility and duties, the primary language change appears to focus on the capacity to operate an irrigation system and the ability to act as a turf specialist. Mr. Garcia believed himself qualified to perform each task delineated in the "new" job description, and he presented testimony from his supervisor, Mr. Stuive, in support of this assertion. *See* Aplt's App. vol. 3, ex. 17, at 124–25, 175–76 (Testim. of Club Manager Stuive that Mr. Stuive believed Mr. Garcia could complete all items listed on revised job description).

On the other hand, one might read the job descriptions as did the district court and discern that the positions are distinct. The district court focused on the salary disparity and the purported increase in responsibilities. In addition, PCC points to evidence that suggests that Mr. Garcia believed the position to have been eliminated. *See* Aplt's App. vol. 6, ex. 49, at 2 (Functional Capacity Evaluation for Arsenio Garcia dated Dec. 4, 1998) ("Client reports he worked at Pueblo Country Club for over 40 years. He reports that his position was eliminated on June 30, 1998."). We disagree with PCC that the evidence of job elimination is "uncontroverted." Aple's Br. at 26. Rather, construing the facts in Mr. Garcia's favor, we conclude there remains open a genuine issue of material fact surrounding the job elimination.   •

In light of the disputed facts surrounding the two Golf Course Superintendent positions, we rely on the Second Circuit's reasoning in *Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir.1995), and conclude that the determination of whether or not the position was eliminated in this case is a question for the jury. *See Richmond*, 120 F.3d at 208 (noting that a dispute underlying a material fact is " 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In *Quaratino*, the plaintiff was terminated while on maternity leave. When she returned to work, she received a lower level position but kept applying for her former position, which had a new job title. Ms. Quaratino's employer neither notified her of the vacancy nor encouraged her to apply for the position. In granting summary judgment, the district court, as here, adopted the employer's justification for the employment restructuring. In observing that Ms. Quaratino's original "job was indeed eliminated," the district court stressed the twenty percent increase in salary and the addition of "a substantial additional task." *Quaratino*, 71 F.3d at 65.

In reversing the district court's grant of summary judgment, the Second Circuit noted that "[e]mployers have the right to restructure jobs and job responsibilities, but they cannot use that process to implement discriminatory objectives." *Id.* The court determined that the district court exceeded its authority when it determined whether the "former position remained open or had been eliminated." *Id.* Such a determination "was a question of fact that should have been determined by a jury, not by the trial court judge." *Id.*

The Eleventh Circuit reached a similar conclusion in *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1211–12 (11th Cir.1997). In *Benson*, the employer allegedly eliminated the plaintiff's human resources position and created a new job that required both administrative and clerical skills. The plaintiff alleged that his position was not in fact eliminated and that the purported restructuring was a pretext for discrimination. The plaintiff presented evidence that he could perform the tasks required in the "new" position, with the possible exception of computer skills. Before the alleged job consolidation, however, the employer had

no reason to evaluate plaintiff's computer skills because none were required in his previous position. Because the employer hired an applicant with no more clerical skills than plaintiff, and because the employer failed to investigate whether the plaintiff "might have had the necessary skills to adapt to [the] restructured ... position," the court determined that the district court's grant of summary judgment on this issue was in error. *See Benson*, 113 F.3d at 1211–12.

Finally, in *Atchley v. Nordam Group*, 180 F.3d 1143, 1147, 1149 (10th Cir.1999), we considered the propriety of the determination of job elimination in the context of a motion for judgment as a matter of law. In affirming the plaintiff's victory on her Pregnancy Discrimination Act claim, we held that the defendant's proffered "corporate restructuring" was not a viable nondiscriminatory reason for plaintiff's discharge. *Id.* at 1149. The evidence indicated that the plaintiff was the sole employee displaced by the alleged restructuring. In rejecting the employer's motion, we reasoned that "[t]he jury did not accept [defendant's] argument" that plaintiff's "position had been eliminated" through "the so-called restructuring." *Id.* at 1151. We noted that after the job "elimination," the defendant hired another document clerk. Although the new employee may have had "greater computer skills," the duties of the two positions were similar. *Id.* We declined to reverse the jury's conclusion, or the trial court's conclusion when it denied the defendant's judgment as a matter of law as to whether the defendant eliminated the first position. *See also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137–1139 (10th Cir.2000) (holding plaintiff had established a prima facie case of age discrimination where one position for which the plaintiff was allegedly qualified involved both (1) skills from his past position and (2) "a job for which

[plaintiff's] supervisor ... thought [plaintiff] was qualified").

Construing the facts, resolving all ambiguities, and drawing all inferences in Mr. Garcia's favor, there is sufficient evidence in the record to raise a genuine issue of fact as to whether PCC eliminated Mr. Garcia's position under circumstances giving rise to an inference of discrimination. The district court appeared to rely on the salary differential and the purported change in tasks, although there is testimony that Mr. Garcia was qualified to perform those tasks. *Cf. Quaratino,* 71 F.3d at 65. The district court, however, is limited "to decid[ing] whether any factual issues exist that would warrant a trial, not to resolv[ing] those issues] in favor of either party." *Id.; see also Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994) ("[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.").

### B. Whether Mr. Garcia Can Demonstrate Adverse Effect is a Disputed Issue of Material Fact

▪ The district court also concluded that, even if PCC did not eliminate Mr. Garcia's position, Mr. Garcia still could not recover. The district court based this alternative finding on a determination that Mr. Garcia could not demonstrate any adverse effect from PCC's actions.

The district court believed that Mr. Garcia could not establish adverse action in connection with the elimination of his job because he declined to accept the lower-level Repair/Maintenance Manager position.

tion. Thus, the district court concluded, Mr. Garcia opted to terminate his employment with PCC.

▪ Whether Mr. Garcia can establish adverse action is a disputed issue of material fact. We disagree with the district court's assessment of this cause of action. *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 760, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (stating that conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").[4] This circuit, "[i]n recognition of the remedial nature of Title VII," liberally defines what constitutes an adverse employment action. *Jeffries v. State of Kansas,* 147 F.3d 1220, 1232 (10th Cir.1998). We "take[ ] a case-by-case approach to determin[e] whether a given employment action is 'adverse.'" *Id.*

Although the circumstances surrounding Mr. Garcia's discharge may be in dispute, Mr. Garcia can likely demonstrate, at the very least, "a decision causing a significant change in benefits," i.e., his eventual termination. *Burlington,* 524 U.S. at 760. We hold that whether or not Mr. Garcia can establish adverse effect in support of an unlawful discharge claim must be submitted to a trier of fact.

### III. CONCLUSION

▪ Because the facts stated in Mr. Garcia's complaint, taken in the light most favorable to him, may properly state a claim of age discrimination under the ADEA, and/or discrimination based on

---

4. We note that PCC disputes that it "discharged" Mr. Garcia. PCC maintains that Mr. Garcia decided to terminate his employment with PCC and opted not to apply for the "new" position. Under either scenario, Mr.

Garcia faced a significant change in his employment status, a change that may establish the adverse action prong of a discriminatory discharge case.

race or national origin, we reverse and remand for further consideration of these claims.[5]

**5.** We are dismayed with PCC's reliance upon errata from deposition testimony where that errata strayed substantively from the original testimony. *See* Aple's Br. at 35–36. PCC relies in part on testimony from the Club Manager Mr. Stuive that the reason he placed an advertisement in the Rocky Mountain Golf Course Superintendents' Newsletter was because he and the Board wanted "to have the right person in place." *Id.* at 36. In fact, however, Mr. Stuive actually testified that he did not know why there was an advertisement run for this position.

We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony. *See, e.g., Coleman v. Southern Pac. Transp. Co.,* 997 F.Supp. 1197, 1205 (D.Ariz.1998) (discrediting deposition testimony directly contradicted by errata sheet); *S.E.C. v. Parkersburg Wireless, L.L.C.,* 156 F.R.D. 529, 535 (D.D.C.1994) (noting modern trend in which courts do not allow a party "to make any substantive change she so desires" in deposition testimony); *Rios v. Bigler,* 847 F.Supp. 1538, 1546–47 (D.Kan.1994) (stating that the court will consider only those changes which clarify the deposition, and not those which materially alter it); *Greenway v. International Paper Co.,* 144 F.R.D. 322, 325 (W.D.La.1992) (suppressing deponent's attempt to rewrite material answers given in deposition); *Barlow v. Esselte Pendaflex Corp.,* 111 F.R.D. 404, 406 (M.D.N.C.1986) (refusing to consider changes to deposition that were made in bad faith). Of all these courts, perhaps the *Greenway* court expressed the purpose and scope of Rule 30(e) best:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Greenway,* 144 F.R.D. at 325.