**Carla J. SUMMERHOUSE, as executrix of the Estate of Dennis M. Summerhouse, deceased, and Carla J. Summerhouse, as surviving spouse of Dennis M. Summerhouse, deceased, and as an Individual, Plaintiffs,**

v.

**HCA HEALTH SERVICES OF KANSAS, a Kansas corporation, merged into Health Services of Kansas Merger Corporation, a Delaware Corporation, merged into Kansas Healthserv, L.L.C., a Delaware limited liability company, Defendant.**

No. 01–1306–MLB.

United States District Court,
D. Kansas.

June 12, 2003.

Paul Arabia, Wichita, KS, for plaintiff.

John H. Gibson, Curtis A. Loub, Michelle M. Watson, Gilliland & Hayes, P.A., Witchita, KS, for defendants.

### MEMORANDUM AND ORDER

BOSTWICK, United States Magistrate Judge.

The court now considers defendant's Motion to Strike Changes to plaintiff's deposition. (Doc. 110.) Defendant Kansas Healthserv, L.L.C. (Wesley) seeks to strike changes made to plaintiff Carla Summerhouse's deposition under Fed.R.Civ.P. 30(e). Summerhouse filed a response (Doc. 117), and Wesley filed a reply. (Doc. 123.) Wesley's motion is GRANTED in part, and DENIED in part, for reasons set forth herein.

### BACKGROUND

This case centers around a disputed employment contract between plaintiff's late husband, Dr. Dennis Summerhouse, and Wesley. (Doc. 111 at 1–2.) Dr. Summerhouse was employed by Wesley from 1996 until his death in 1998. *Id.* at 2. Plaintiff brings this action in her capacities as executrix of Dr. Summerhouse's estate, and as his surviving spouse. *Id.* at 1–2. The claim largely focuses on Wesley's alleged failure to honor certain provisions in the contract that apparently required Wesley to increase Dr. Summerhouse's compensation to match that

of physicians hired after him, if any such physician was compensated in an amount higher than Dr. Summerhouse. *See generally* Doc. 1.

On February 14, 2003, Wesley took Ms. Summerhouse's deposition. (Doc. 111 at 2.) Pursuant to Fed.R.Civ.P. 30(e), plaintiff reviewed the deposition transcript and submitted changes. *See id.* at 2–3. Some of the changes corrected typographical errors. *See id.* exh. B at 1. However, at the heart of the present controversy, Ms. Summerhouse appended the following narrative to her deposition errata sheet:

> I misspoke the time line regarding Dennis using the terms "MFN" and "OCC", I am sorry. He never knew those terms; I didn't know them myself until approximately two years after he died. I regret any confusion this may have caused. Dennis did complain about Wesley; but when he talked about the problems he either talked about "Wesley" or his department. This lawsuit has been going on for three years and I am reminded every day of his death at a relatively young age. Not only only [sic] am I reminded every day of his death but am angered at the way my husband was treated during the last years of his life.
>
> Dennis was upset and angry at Wesley for many reasons; among them the payroll mistakes that were made; having to return to work early after an illness; his 401(k) contributions; his P.E. or P.A.'s were fired and directly effected [sic] his pratice [sic] insofar as his ability to give quality care for his patients and Wesley never responded to his request for mediation, Wesley cut patient flow by limiting the number of patients he could see an hour, shortened office hours and closing the clinic on Saturdays. I took many calls from patients who were upset because they were unable to see their doctor; Wesley made mistakes in his short and long term disability insurance premium deductions which were important considering his illness.
>
> I want to set the record straight and clear up any misunderstanding my testimony may have caused. The only contract Dennis knew specifically was his own.

> Any confusion my testimony has caused concerning terms used by my husband or myself is regretted. Any testimony contrary to this correction is withdrawn.

*Id.* exh. B at 2–4. Rather than specify a particular deposition answer to which this correction applied, Ms. Summerhouse designated it as applicable to twelve pages of deposition testimony. *See id.* exh. B at 1.

In the present motion, Wesley asks the court to strike plaintiff's changes to her deposition. (Doc. 110 at 1–2.) Wesley asserts that these alterations are beyond the scope of changes permitted under Rule 30(e). (Doc. 111 at 4.) Furthermore, Wesley claims that Ms. Summerhouse failed to follow the procedural requirements under Rule 30(e), and that such failures also merit a decision to strike the changes. *Id.* at 7.

### DEPOSITION CHANGES UNDER FED. R. CIV. P. 30(e)

Fed.R.Civ.P. 30(e) provides:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, *if there are changes in form or substance*, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

(emphasis added). Although this provision has been amended several times, the language describing the breadth of permitted changes has remained essentially unaltered since adoption of the Federal Rules of Civil Procedure in 1937. *See* 7 Moore's Federal Practice § 30App.01 (Matthew Bender 3d ed.). The traditional view adopted by the federal courts has been that Rule 30(e) permitted any changes, regardless of whether they contradicted deposition testimony. *See Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir.1997); *U.S. ex rel. Burch v. Piqua Eng'g, Inc.*, 152 F.R.D. 565, 566–67 (S.D.Ohio 1993); *Lugtig v. Thomas*, 89

F.R.D. 639, 641 (N.D.Ill.1981); *Allen & Co. v. Occidental Petroleum Corp.*, 49 F.R.D. 337, 340 (S.D.N.Y.1970); *Colin v. Thompson*, 16 F.R.D. 194, 195 (W.D.Mo.1954); *De Seversky v. Republic Aviation Corp.*, 2 F.R.D. 113, 115 (E.D.N.Y.1941). In order to mitigate the potential for abuse of such a liberal view, many courts reserved the right to reopen the deposition if the changes were material. *See Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F.Supp.2d 95, 120–21 (D.Mass.2001); *Burch*, 152 F.R.D. at 567; *Allen & Co.*, 49 F.R.D. at 341; *Colin*, 16 F.R.D. at 195; *De Seversky*, 2 F.R.D. at 115. This interpretation still appears to represent the majority view in the federal courts.

In recent times, however, a trend has emerged that limits the scope of changes permitted under Rule 30(e). *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir.2000) ("a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'"); *Rios v. Welch*, 856 F.Supp. 1499, 1502 (D.Kan.1994); *Rios v. Bigler*, 847 F.Supp. 1538, 1546–47 (D.Kan.1994); *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D.La. 1992); *cf. Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir.1993) ("[a] subsequent affidavit may be used to clarify ambiguous or confusing deposition testimony, or it may be based on newly discovered evidence.... But where there is no explanation of the conflict, self-serving, contradictory affidavits such as this one cannot create genuine issues of material fact"). The most restrictive view appears in *Greenway*, where the court struck all 64 changes made to plaintiff's deposition. *Greenway*, 144 F.R.D. 322, 325. The *Greenway* court said,

> [t]he purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported

the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Id.* Thus, according to *Greenway*, Rule 30(e) only permits correcting transcription errors; therefore, it does not authorize changes because the deponent lied, misspoke, or otherwise wants to change or clarify his testimony.

Kansas appears to be one of the federal districts tending toward the more restrictive view of Rule 30(e). On the other hand, facially conflicting case law exists within the district that makes resolution of the proper rule a challenging task. In *Rios v. Bigler*, 847 F.Supp. 1538 (D.Kan.1994), *aff'd* 67 F.3d 1543 (10th Cir.1995), Judge Lungstrum cited *Greenway* in support of his decision to ignore Rule 30(e) changes to plaintiff's expert's deposition testimony. In explaining his reasoning, Judge Lungstrum said "[t]he court will only consider those changes which *clarify* the deposition, and not those which *materially alter* the deposition testimony as a whole." *Id.* at 1546–47 (emphasis added). Three months later, Judge Lungstrum reaffirmed this view in *Rios v. Welch*, 856 F.Supp. 1499 (D.Kan.1994), *aff'd* 67 F.3d 1543 (10th Cir. 1995),[1] saying,

> [i]t is the court's belief that a plaintiff is not permitted to virtually rewrite portions of a deposition, particularly after the defendant has filed a summary judgment motion, simply by invoking the benefits of Rule 30(e).... [A] deposition is not a "take home examination" and an 'errata sheet' will not eradicate the import of previous testimony taken under oath.

---

1. Although *Bigler* and *Welch* are styled differently, they are opinions from the same case. Plaintiff Rios' lawsuit was originally filed against both Bigler and Welch. Bigler was the first named defendant; therefore, his name appeared in the style. Between the time *Bigler* and *Welch* were issued, Bigler settled and was dismissed from the

case, leaving Welch as the only remaining defendant. Note also that, although *Bigler* and *Welch* were affirmed by the Tenth Circuit, the circuit court did not address the scope of changes permitted under Rule 30(e). *Rios v. Bigler*, 67 F.3d 1543, 1552 (10th Cir.1995).

*Id.* at 1502 (quoting *Greenway,* 144 F.R.D. at 325).

A few months after *Welch,* Magistrate Judge Reid applied the traditional, broad view of Rule 30(e) in denying a defendant's motion to strike changes to the plaintiff's deposition. *See Luhman v. Dalkon Shield Claimants Trust,* 1994 WL 542048 (D.Kan. 1994). Plaintiff characterizes *Luhman* as being at odds with *Bigler,* and thus argues there is a split in the district on the scope of changes permitted by Rule 30(e). (Doc. 117 at 5.)

On the contrary, a closer look demonstrates that *Luhman* does not contradict *Bigler.* Although the defendant in *Luhman* designated it's motion as a motion to strike, *see* Defendant's Motion to Re–Open Plaintiff's Deposition and Strike Plaintiff's "Corrections" to Her Deposition Transcript (Doc. 34), *Luhman v. Dalkon Shield Claimants Trust,* 1994 WL 542048 (D.Kan.1994) (No. 92–1417), the defendant basically capitulated on that demand in its opening paragraph, saying "[t]he Trust further requests the Court strike plaintiff's 'corrections' to her deposition transcript *or, in the alternative,* permit the Trust to depose plaintiff as to the reason behind such changes." *Id.* at *1 (emphasis added). Furthermore, the defendant in *Luhman* went on to say "the Trust does not oppose allowing plaintiff's corrections to remain and extending the re-opened deposition to include plaintiff's changes to her deposition testimony." Defendant's Memorandum in Support of Motion to Strike (Doc. 35 at 11), *Luhman v. Dalkon Shield Claimants Trust,* 1994 WL 542048 (D.Kan.1994) (No. 92–1417). These statements made it clear to the *Luhman* court that it need not address *Bigler* and the growing minority view of Rule 30(e). Instead, Judge Reid could grant the alternative relief sought by the defendants, which was consistent with the traditional view of Rule 30(e). This assessment of *Luhman* is bolstered by the fact that, although the defendant cited *Bigler* in support of its motion, *see id.* at *8, Judge Reid never addressed *Bigler* in his opinion. One would certainly expect that if Judge Reid intended to disagree with Judge Lungstrum, or otherwise distinguish *Bigler,* he would not do so *sub silentio.* Accordingly, the court concludes that *Luhman* is not relevant in determining the limits of Rule 30(e).

In the years that followed *Luhman,* two other district judges spoke favorably of Judge Lungstrum's view. In *Wiley v. Brown,* 164 F.R.D. 547 (D.Kan.1996), Judge O'Connor analogized changes to an expert's report with changes to deposition testimony under Rule 30(e). In so doing, Judge O'Connor quoted *Welch* for the proposition that Rule 30(e) does place some limits on deposition changes. *Id.* at 549. Similarly, in *Zhu v. Countrywide Realty Co.,* 165 F.Supp.2d 1181 (D.Kan.2001), Judge Vratil cited *Welch* as precluding deposition changes that seek to supply "more artful answers." *Zhu,* 165 F.Supp.2d at 1195 n. 13. Furthermore, Judge Vratil stated Rule 30(e) only allows plaintiff "to correct transcription errors." *Id.* These statements in *Wiley* and *Zhu* are undeniably dicta, since neither case directly faced questions regarding the scope of Rule 30(e) changes; yet, they give considerable insight into how Rule 30(e) is viewed within the district.

Conversely, the question of how broadly to interpret the changes permitted under Rule 30(e) *was* squarely presented in *Pepsi–Cola Bottling Co. of Pittsburgh v. Pepsico, Inc.,* 2002 WL 511506 (D.Kan.2002). There, Magistrate Judge Waxse faced plaintiff's motion to strike Rule 30(e) changes to a deposition. Judge Waxse reviewed both the majority rule and the apparent conflict between *Bigler* and *Luhman. See id.* at *2–*3. In attempting to harmonize the different views, Judge Waxse determined that Judge Lungstrum's approach was limited to cases with pending motions for summary judgment. *Id.* at *4. Accordingly, the traditional, majority view of Rule 30(e) would apply to permit any changes to the deposition, so long as no summary judgment motions were open. *See id.*

Finally, the Tenth Circuit commented on the matter, albeit merely footnoted dictum. In *Garcia v. Pueblo Country Club,* 299 F.3d 1233 (10th Cir.2002), in a final footnote, the panel made very clear its distaste for a broad reading of Rule 30(e). *See id.* at 1242 n. 5. "We do not condone counsel's allowing for

*material changes* to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony." *Id.* (emphasis added). In support of that position, the Tenth Circuit cited both *Bigler* and *Greenway*. *Id.* Moreover, as a final testament to the panel's view of Rule 30(e), the court said

> [o]f all these courts, perhaps the *Greenway* court expressed the purpose and scope of Rule 30(e) best:
>
>> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Id.* (quoting *Greenway*, 144 F.R.D. at 325). Although these statements were admittedly dictum when spoken, they have since been elevated and incorporated into the law of this circuit.

On June 3, 2003, the Tenth Circuit issued its opinion in *Burns v. Bd. of County Comm'rs of Jackson County, Kan.*, 330 F.3d 1275 (10th Cir.2003) (designated for publication). *Burns* was issued after the briefs for the instant motion were filed. Indeed, this court was well on its way to deciding the present motion when *Burns* came down. Fortunately, *Burns* directly addresses the scope of changes permitted under Rule 30(e), thereby removing any uncertainty and disagreement over this matter that has plagued the district in recent years. Furthermore, *Burns* quoted with approval from *Garcia's* footnote 5, including the embedded quote from *Greenway v. Int'l Paper Co. See Burns*, 330 F.3d at 1281–82.

In *Burns*, plaintiff's Rule 30(e) changes made material alterations to his deposition testimony. *See id.* In particular, the plaintiff took unequivocal answers from his deposition testimony and tried to inject uncertainty into them by adding language that limited the decisiveness of his original statements. *See id.* When the defendants moved for summary judgment, the trial court rejected plaintiff's Rule 30(e) changes and granted the motion. *See id.* at 1280–82.

■ The Tenth Circuit held that Rule 30(e) changes should be evaluated under the sham affidavit analysis articulated in *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986). *Burns*, 330 F.3d at 1282–83. The circuit court reviewed the factors to consider when determining whether to permit Rule 30(e) changes. *See id.* at 1281–82. Those factors include "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* at 1282 (quoting *Franks*, 796 F.2d at 1237).

In determining when to apply these factors, however, the court notes that *Burns* and *Franks* deal with determining how contradictions to deposition testimony will affect summary judgment. Ms. Summerhouse urges the court to follow *Pepsico*, and hold that the minority view of Rule 30(e) applies only to changes made during the pendency of a summary judgment motion. (Doc. 117 at 9.) However, nothing in the language of *Burns* or *Garcia* limits their guidance to times when a motion for summary judgment is pending. Indeed, *Burns* is silent on whether the plaintiff's Rule 30(e) changes occurred before or after a dispositive motion was filed. Moreover, there was no such motion pending in *Greenway*, which both *Burns* and *Garcia* cite for their conclusions. Finally, there is nothing in the language of Rule 30(e) that suggests a different application of the rule based on the pendency of particular types of motions. Accordingly, whatever changes Rule 30(e) permits, they are permitted without regard to the pendency of a summary judgment motion.

Conversely, were the court to follow Ms. Summerhouse's suggestion, the policy of prohibiting sham issues from precluding summary judgment, so clearly set forth in *Burns* and *Garcia*, would still be undermined. A clever party could review a deposition for weaknesses, and then correct those weaknesses with an eye toward precluding an unfavorable summary judgment, so long as no such motion has yet been filed. That is the weakness of the *Pepsico* rule. It only precludes material changes when the summary judgment motion is on file; however, under *Pepsico*, anyone who can get their deposition changes in before the summary judgment motion gets filed will prevail. For these reasons, the court chooses not to adopt Ms. Summerhouse's view of Rule 30(e), and not to follow *Pepsico*.[2]

■ On the other hand, the fact that *Burns* and *Franks* are decided in the context of summary judgment motions does suggest that Rule 30(e) changes only face a heightened standard of review if they have the potential to affect summary judgment. Accordingly, *Burns* assumes a threshold inquiry of whether the changes are material. If they are immaterial, then the changes cannot affect summary judgment, and the *Burns* analysis is unnecessary. Therefore, in synthesizing the district and circuit case law up through *Burns*, the court concludes that Rule 30(e) permits any changes to deposition testimony, *except those material changes that fail the Burns test.* Hence, in determining whether Ms. Summerhouse's changes are within the scope of Rule 30(e), the court will first determine whether the changes are material. Only then will the court apply the *Burns* analysis in deciding if the changes should be stricken.

### SUMMERHOUSE'S RULE 30(e) CHANGES

■ The changes to Ms. Summerhouse's deposition will be analyzed in two parts. The first part (Part A) reads:

I misspoke the time line regarding Dennis using the terms "MFN" and "OCC", I am sorry. He never knew those terms; I didn't know them myself until approximately two years after he died. I regret any confusion this may have caused.

(Doc. 111 exh. B at 2.) The term MFN is an abbreviation for "most favored nations," and the term OCC appears to be an abbreviation for "optimum contract clause," although OCC is never used in any part of the deposition to which the proposed changes are supposed to apply. *See generally* Doc. 111 exh. A at 33–37, 43–44, 85–88. Wesley objects to these changes, arguing that they exceed the scope of changes permitted by Rule 30(e), and that the changes were not made according to the procedures required by Rule 30(e). The court will address each contention in turn.

*Part A–Scope of Rule 30(e)*

As discussed *supra*, Rule 30(e) permits non-material changes to deposition testimony, as well as those material changes that satisfy the test adopted in *Burns v. Bd. of Comm'rs of Jackson County, Kan.*, 330 F.3d 1275 (10th Cir.2003). A change is material if it bears on an essential element of a claim or defense. *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). Based on the affected parts of Ms. Summerhouse's deposition, the changes in Part A are not material, and are therefore within the scope of Rule 30(e).

First, the court concludes that all uses of the terms "most favored nations," "optimum contract clause," and "MFN" on the designated pages of the deposition transcript (with the exception of page 33) were a mere shorthand for the underlying contract language that was the focus of the discussion. Throughout these pages, both Ms. Summerhouse and the deposing attorney, Mr. Gibson, clearly used these code words and abbreviations to refer to specific language in Dr.

2. The court also notes that Judge Waxse's efforts to distinguish *Bigler* were guided by the apparent disagreement between *Bigler* and *Luhman*. *See Pepsico*, 2002 WL 511506 at *2–*3. *Luhman* was the only Kansas case cited in *Pepsico* for the proposition that the district is divided over how to interpret Rule 30(e). Since the court has concluded that *Luhman* is not at odds with *Bigler*, the court rejects the idea that the district was divided when *Pepsico* was decided. Accordingly, there was no need for *Pepsico* to distinguish *Bigler* in order to harmonize district case law.

Summerhouse's employment contract. *See generally* Doc. 111 exh. A at 30–32, 34–37, 43–44. Rather than refer to the specific contract provisions as "paragraph X," or "appendix Y, page Z," Mr. Gibson consistently referred to it as "the optimum contract clause." *See, e.g., id.* exh. A at 34 ll. 10–13. Similarly, Ms. Summerhouse alternates her reference between "optimum contract clause," "most favored nations," and "MFN." *See, e.g., id.* exh. A at 43–44. Thus, under these circumstances, the proposed changes are not even substantive, but merely a change in form that helps clarify her testimony.

Such is not the case, however, on page 33 of the deposition transcript. There, the questions and answers clearly focused on the specific use of the terms "optimum contract clause," "most favored nations," and "MFN" in earlier discussions between Dr. and Ms. Summerhouse. The deposition proceeded as follows:

Q: And did you know what he was talking about when he said optimum contract clause?

A: Yes.

Q: What was your understanding of what that term meant *at the time of that conversation?*

A: MFN.

Q: MFN, meaning "most favored nations?"

A: Yes.

Q: What was your understanding? At that time you understood that there was a contract clause that was called the MFN or the optimum contract clause, correct?

A: Correct.

(Doc. 111 exh. A at 33 ll. 8–21) (emphasis added). This exchange clearly shows that the deposition focused on the specific use of these terms in conversations between Dr. and Ms. Summerhouse. In that regard, Ms. Summerhouse's changes are substantive. The proposed changes will contradict answers she gave under oath in her deposition. Although these changes are substantive, and have impeachment value, they are not material. None of the claims or defenses at issue in the case depend on the use of these terms in conversations between Dr. and Ms. Summerhouse. Neither do any of the claims or defenses depend on Dr. or Ms. Summerhouse's knowledge of these terms. Accordingly, the changes are not material. Therefore, all the changes contained in Part A are within the scope of Rule 30(e) and will be permitted, so long as the procedural requirements of Rule 30(e) are also satisfied.

*Part A—Compliance with Rule 30(e) procedural requirements*

Rule 30(e) expressly states only two procedural requirements to affect changes thereunder: the deponent must sign the changes and give reasons for them. *See* Fed.R.Civ.P. 30(e). Wesley argues that Rule 30(e) implies an additional requirement that changes be made on a line-by-line basis. (Doc. 111 at 6–7.) In other words, Wesley asserts that changes may only be made by identifying the specific question and changing the specific answer. *See id.*

The court agrees that in order to make sense of the reasons given for changes, the deponent must identify those portions of the transcript to which the changes apply. If the deponent changes a "yes" to a "no," or a "15" to a "38," then the deponent must identify the particular question to which the change applies. However, the changes advanced in Part A are of a different nature. Ms. Summerhouse now admits that she did not know the terms "MFN" and "OCC" prior to her husband's death. She wants to clarify the context of her use of those terms throughout much of her deposition, and impliedly admits that her answers on page 33 of the deposition transcript may have been misleading or untrue. However, for an error of this sort, a line-by-line correction makes little sense. Many of the questions build on one another. Had she not used the terms "most favored nation" and "optimum contract clause" previously in the deposition, the questions on page 33 of the transcript regarding her prior use of those terms would never have been asked. Accordingly, a line-by-line correction with specific new answers inserted would turn some parts of the deposition into utter nonsense. A quick review of the pages to which

Ms. Summerhouse's changes apply reveals precisely which questions and answers will be affected. Under these circumstances, the court finds that Ms. Summerhouse has sufficiently identified the portions of her transcript to which the changes in Part A apply. Although the changes effectively render some of the transcript useless, Wesley will be given an opportunity to remedy that by re-opening Ms. Summerhouse's deposition for the limited purpose of exploring the changes in Part A.

The second procedural requirement is that reasons be given for the changes. Courts interpreting that requirement have held that any reason is adequate, so long as the reason is specific, and not conclusory. *See Tingley Sys., Inc. v. CSC Consulting, Inc.,* 152 F.Supp.2d 95, 120 (D.Mass.2001); *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1406–07 (N.D.Ill. 1993); *Lugtig v. Thomas,* 89 F.R.D. 639, 641 (N.D.Ill.1981). In this case, Ms. Summerhouse gives "error" as her reason on the errata sheet. (Doc. 111 exh. B at 1.) Furthermore, she expounds on this reasoning in Part A, where she explains that she misspoke in using the terms MFN and OCC because she did not know of those terms until well after her husband died. The court finds this reasoning is sufficient, and not conclusory. It explains why she needs to make the changes. That is enough.

In sum, the court finds that the changes in Part A are within the scope of Rule 30(e). Moreover, the procedure by which Ms. Summerhouse affected these changes adequately complies with the requirements of the rule.[3] Therefore, Wesley's Motion to Strike the changes in Part A is DENIED.

*Part B–Scope and Procedure*

■ The court designates the remaining portion of the changes to Ms. Summerhouse's deposition as Part B, which reads as follows:

Dennis did complain about Wesley; but when he talked about the problems he either talked about "Wesley" or his department.

This lawsuit has been going on for three years and I am reminded every day of his death at a relatively young age. Not only only [sic] am I reminded every day of his death but am angered at the way my husband was treated during the last years of his life.

Dennis was upset and angry at Wesley for many reasons; among them the payroll mistakes that were made; having to return to work early after an illness; his 401(k) contributions; his P.E. or P.A.'s were fired and directly effected [sic] his pratice [sic] insofar as his ability to give quality care for his patients and Wesley never responded to his request for mediation, Wesley cut patient flow by limiting the number of patients he could see an hour, shortened office hours and closing the clinic on Saturdays. I took many calls from patients who were upset because they were unable to see their doctor; Wesley made mistakes in his short and long term disability insurance premium deductions which were important considering his illness.

I want to set the record straight and clear up any misunderstanding my testimony may have caused. The only contract Dennis knew specifically was his own.

Any confusion my testimony has caused concerning terms used by my husband or myself is regretted. Any testimony contrary to this correction is withdrawn.

(Doc. 111 exh. B at 2–4.) This self-serving narrative bears no relation to any questions asked in the relevant parts of the deposition. By its own terms, Rule 30(e) contemplates "changes," not wholesale additions that bear no relation to any identifiable part of the deposition. Fed.R.Civ.P. 30(e). Ms. Summerhouse points to no question where she was invited to give a narrative response such as the one contained in Part B. Accordingly, the change advanced in Part B is non-responsive to any deposition question, and is therefore beyond the scope of changes permitted

---

**3.** The last line of Ms. Summerhouse's changes states "[a]ny testimony contrary to this correction is withdrawn." Wesley expresses concern that this statement may be interpreted to spread the changes beyond the specific pages cited on the errata sheet. (Doc. 123 at 2.) The court specifically rejects any such interpretation. The changes in Part A will only apply to the specific pages identified in the errata sheet.

by Rule 30(e). It is not a *change* at all, but an unrelated statement that neither changes nor clarifies any answer given in her deposition. Rule 30(e) authorizes no such additions to the deposition transcript.

Furthermore, the changes proposed in Part B fail to satisfy the procedural requirements of Rule 30(e). Although the court interpreted the rule broadly with respect to the requirement that a reason be given for each change, even that broad interpretation cannot save Part B. Since Ms. Summerhouse did not divide her changes into two parts, as the court does in its analysis, she did not provide separate reasons for her changes. Thus, her assertion that the reason for the changes is "error" (Doc. 111 exh. B at 1), applies to both Parts A and B. In Part A, the court could combine the conclusory "error" with the explanation that Ms. Summerhouse had misspoken and did not know the terms MFN and OCC at the relevant time, in order to conclude that a sufficient reason had been provided. Conversely, the clarifying statements in Part A do not apply to Part B. The fact that Ms. Summerhouse misspoke or lacked knowledge of specific terms at specific times has nothing to do with the narrative in Part B. Accordingly, the only reason provided for the changes in Part B is "error." *See id.*

In reviewing the pages of the deposition transcript to which the changes in Part B are supposed to apply, the court finds no answers for which Part B will correct "error[s]." *See id.* Unlike Part A, Part B is the type of change where the deponent might help herself by identifying the specific answers to which the change applies. Since the court can find no answers for which Part B corrects errors, the court cannot understand the reason for the change. Therefore, the reason is conclusory and the change will not be permitted.

To summarize, the changes in Part B go beyond the scope of changes permitted under Rule 30(e) because they fail to respond to any questions asked of the deponent. They are a non-responsive addition to the deposition, not a change, and are therefore beyond the scope of the rule. Furthermore, Ms. Summerhouse failed to follow the procedural requirements of Rule 30(e) in that she did not provide a specific reason for the change. Her reason of "error," without identifying any specific question or questions to which the change applied, render the reason so vague as to be conclusory. Therefore, Wesley's Motion to Strike the changes in Part B is GRANTED.

**IT IS THEREFORE ORDERED** that Wesley's Motion to Strike (Doc. 110) is DENIED as to Part A of the changes, and GRANTED as to Part B of the changes. Part B of the changes is hereby stricken from the errata sheet for all purposes.

**IT IS FURTHER ORDERED** that Wesley shall be entitled to reopen the deposition of Carla Summerhouse for the *limited* purpose of exploring the circumstances leading up to the changes in Part A. The deposition shall be limited to one hour.

